UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 93-7575
_____

HUGH THOMAS BERTRAM,

Plaintiff,

VERSUS

FREEPORT McMORAN, INC., ET AL.,

Defendants,

HOUMA INDUSTRIES, INC.,

Defendant-Appellant,

VERSUS

ENERGY CATERING SERVICES, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

(October 7, 1994)

Before POLITZ, Chief Judge, and DUHÉ and BARKSDALE, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

Primarily in issue are (1) whether an employer's right to be reimbursed by third-party tortfeasors for maintenance and cure paid by the employer to its injured employee is barred by the employee's pre-trial settlements with the third-parties; and, (2) in that the employer was not assigned fault, but the employee was, resulting in the third-party tortfeasors' apportioned fault totalling less than 100%, whether the maintenance and cure should be reimbursed totally

by the third-party tortfeasors, or whether, instead, each should reimburse only according to its apportioned fault, resulting in less than full reimbursement.

Energy Catering Services, Inc., paid maintenance and cure for its employee, Hugh Thomas Bertram, as a result of an accident for which no fault was assigned Energy, Bertram was found 60% at fault, and Houma Industries, Inc., and another third-party were each apportioned 20% of the fault. Before trial, Bertram settled with Energy, Houma, and the other tortfeasor. Houma contests having to reimburse Energy for the maintenance and cure, primarily because of a claimed settlement bar which it asserts springs, in part, from the modern trend in admiralty of apportioning fault. And, as one of its alternative bases for challenging the judgment, Houma maintains, again seeking shelter under that trend, that it should not have to reimburse 50% of the maintenance and cure, because it was apportioned only 20% of the fault. We **AFFIRM**.

I.

Bertram, an Energy employee, was assigned to work aboard a drilling barge owned by Offshore Pipelines, Inc. (OPI). The vessel was anchored next to a fixed oil and gas platform owned by Freeport-McMoran, Inc., and Freeport-McMoran Oil & Gas Co. (collectively, Freeport) and located on the Outer Continental Shelf off the coast of Louisiana. Houma Industries, Inc., was a contractor on the platform. In November 1990, while returning to the barge from the platform, Bertram was injured on the platform by

a falling ladder, which Houma's employees had used and had been directed to secure.

Bertram sued under the Jones Act and general maritime law, seeking recovery from Energy for maintenance and cure; and from Energy and OPI for negligence and unseaworthiness. He later added negligence claims against Freeport and Houma. Energy cross-claimed against Houma and Freeport for contribution or indemnity; they did likewise against Energy.

Prior to trial, Bertram settled with all defendants: OPI (shipowner), Freeport (platform owner), Houma (platform contractor), and Energy (employer). Therefore, only the cross-claims remained: Energy's against Houma and Freeport for maintenance and cure reimbursement; theirs against Energy for indemnity or contribution.

In July 1993, the district court ruled in favor of Energy.[1] It found Energy without fault for Bertram's injuries, and apportioned fault as follows: Bertram, 60%; Houma and Freeport, each 20%. But, by an amended judgment, and although Houma and Freeport had each been found only 20% at fault, each was required to reimburse Energy for 50% of the approximately $143,000 paid for maintenance and cure. Only Houma appeals.

---

[1] The parties agreed to a summary disposition, with each submitting proposed findings of fact and conclusions of law, together with depositions and documentary evidence.

II.

Maintenance and cure is a seaman's right under general maritime law to receive a "per diem living allowance for food and lodging [maintenance] and ... payment for medical, therapeutic and hospital expenses [cure]". **Black's Law Dictionary** 954 (6th ed. 1991); *Davis v. Odeco*, 18 F.3d 1237, 1245-46 (5th Cir.), *petition for cert. filed*, 62 U.S.L.W. 3863 (U.S. June 10, 1994) (No. 93-1986). A shipowner must pay maintenance and cure to any seaman who "becomes ill or suffers an injury while in the service of a vessel", regardless of whether either party was negligent. 1B Ellen M. Flynn et al., **Benedict on Admiralty** § 42, at 4-5 (7th ed. 1993) (hereinafter cited as **Benedict**); *see also* Virginia A. McDaniel, *Recognizing Modern Maintenance and Cure as an Admiralty Right*, 14 Fordham Int'l L.J. 669 (1991). The right terminates only when "maximum cure has been obtained". 1B **Benedict** § 51, at 4-73 (footnote omitted).[2]

---

[2]  One driving factor behind maintenance and cure is that seamen are peculiarly "poor and friendless" and therefore deserve special treatment, regardless of their own behavior. Perhaps the most famous (and often-quoted) language about the special duty owed to seamen by their employers may be Justice Story's, from **Harden v. Gordon**, 11 Fed. Cas. 480 (C.C.D. Me. 1823), the landmark case for modern American maintenance and cure:

> Seamen are by the peculiarity of their lives liable to sudden sickness from change of climate, exposure to perils, and exhausting labour. They are generally poor and friendless, and acquire habits of gross indulgence, carelessness, and improvidence. If some provision be not made for them in sickness at the expense of the ship, they must often in foreign ports suffer the accumulated evils of disease, poverty, and sometimes perish from the want of suitable nourishment....

- 4 -

Houma asserts that the district court erred (1) by holding that Energy's maintenance and cure reimbursement cross-claim survived Bertram's pre-trial settlements with all defendants; (2) by granting Energy recovery of the total medical costs it paid; (3) by finding Houma at fault; and (4) by requiring Houma to pay 50% of the maintenance and cure, rather than 20% (its apportioned fault). Needless to say, findings of fact are reviewed only for clear error, Fed. R. Civ. P. 52(a); *e.g.*, **Anderson v. City of Bessemer City**, 470 U.S. 564, 573 (1985); conclusions of law are reviewed freely. *E.g.*, **Salve Regina College v. Russell**, 499 U.S. 225, 231 (1991).

### A.

Whether Energy's maintenance and cure reimbursement claim against Houma was barred by Bertram's pre-trial settlements with all defendants is a legal issue, reviewed freely, that touches upon

---

\*\*\*

> On the other hand, if these expenses are a charge upon the ship, the interest of the owner will be immediately connected with that of the seamen. The master will watch over their health with vigilance and fidelity. He will take the best methods, as well, to prevent diseases, as to ensure a speedy recovery from them. He will never be tempted to abandon the sick to their forlorn fate, but his duty, combining with the interest of his owner, will lead him to succor their distress, and shed a cheering kindness over the anxious hours of suffering and despondency.

*Id.* at 483, *quoted in*, *inter alia*, 1 Thomas J. Schoenbaum, **Admiralty and Maritime Law** § 6-28, at 351 (2d ed. 1994) (hereinafter cited as **Schoenbaum**); *see also* **Farrell v. United States**, 336 U.S. 511, 516 (1949) (Employer knows "he must maintain and care for even the erring and careless seaman, much as a parent would a child".), *quoted in* 1 **Schoenbaum** § 6-31, at 356.

the trend in maritime law of apportioning fault. In essence, Houma contends that Fifth Circuit precedent on maintenance and cure reimbursement, especially *Savoie v. Lafouche Boat Rentals, Inc.*, 627 F.2d 722 (5th Cir. Unit A 1980) (employer without fault), and *Adams v. Texaco, Inc.*, 640 F.2d 618 (5th Cir. 1981) (employer partly at fault), no longer control. This is addressed best by first retracing, in considerable detail, the steps that led to recovery over against a third-party tortfeasor for maintenance and cure.[3]

1.

As reflected in the earlier brief discussion of maintenance and cure, the district court stated correctly that Energy, as Bertram's employer, owed him "an absolute, non-delegable duty" to provide maintenance and cure, regardless of Bertram's being at fault, and Energy being blameless. *E.g.*, *Davis v. Odeco*, 18 F.3d at 1246 (owner of vessel "has a duty to pay maintenance and cure which is unrelated to any duty of care under tort law") (citing *Adams*, 640 F.2d at 620).

---

[3]  Energy characterizes its claims against Houma and Freeport as for "indemnity and/or contribution"; it seeks "full reimbursement ... for the amounts paid in maintenance and cure, because Energy ... was found free from fault in the accident." Indemnity permits the indemnitee "to shift all the loss onto another tortfeasor", whereas contribution "requires that each tortfeasor pay the proportion of the damages attributable to its actions." *Hardy v. Gulf Oil Co.*, 949 F.2d 826, 830 (5th Cir. 1992) (citations omitted). Because Energy seeks "full reimbursement" from Houma and Freeport (regardless of the fact that Energy's employee's (Bertram's) negligence also contributed to the accident (60% at fault) that necessitated the maintenance and cure), its claim is for indemnity.

> A seaman's right to maintenance and cure is implied in the employment contract between the seaman and shipowner. It "in no sense is predicated on the fault or negligence of the shipowner." Thus, an owner of a vessel is almost automatically liable [for maintenance and cure].

*Brister v. A.W.I., Inc.*, 946 F.2d 350, 360 (5th Cir. 1991) (footnote and internal citations omitted; quoting *Aguilar v. Standard Oil Co. of New Jersey*, 318 U.S. 724, 730 (1943)). In addition, the seaman's right to receive, and the shipowner's duty to pay, maintenance and cure is independent of any other source of recovery for the seaman (*e.g.*, recovery for Jones Act claims). *Brister*, 946 F.2d at 361.

Although a seaman's negligence does not negate a shipowner's duty to pay maintenance and cure, the shipowner may recover those payments from a third-party whose negligence partially or wholly caused the seaman's injury. *E.g.*, *Savoie*, 627 F.2d at 723 (even where seaman was partially responsible, it is "well-established" that employer may recover maintenance and cure costs) (citing *Tri-State Oil Tool Indus., Inc. v. Delta Marine Drilling Co.*, 410 F.2d 178, 186 (5th Cir. 1969)).

Our cases allowing such a recovery follow the holding of the landmark decision in *Jones v. Waterman S.S. Corp.*, 155 F.2d 992, 997-1001 (3d Cir. 1946). There, a seaman employed by Waterman was walking across the pier near his ship and fell into a ditch along a railroad siding owned by Reading. *Id.* at 994. He sued Reading, recovered damages from it, and executed a release in favor of it. *Id.* Thereafter, when the seaman sued Waterman for maintenance,

cure, and wages, Waterman impleaded Reading for indemnity for any recovery by the seaman. *Id.* at 995.

The district court held that, the seaman having received a judgment against Reading, he could not maintain the action against Waterman, because a second judgment for the seaman could be a double recovery. *Id.* And, it refused to permit Waterman's cross-claim against Reading, on the theory set out in *The Federal No. 2*, 21 F.2d 313 (2d Cir. 1927) (because maintenance and cure stems from contract between seaman and employer, employer cannot recover over against a third-party tortfeasor, absent a contractual or other legal relationship between employer and tortfeasor).[4] *Id.* The Third Circuit reversed, finding *The Federal*'s reasoning inapposite. *Waterman*, 155 F.2d at 994, 1001.

In holding that the seaman could proceed against Waterman, and that Waterman could seek recovery over against Reading, the Third Circuit distinguished the seaman's claims against Reading for

---

[4]     Most courts followed *Waterman*'s reasoning, rather than that of *The Federal*. Within the Second Circuit, decisions casting doubt on the continued validity of *The Federal* culminated in its being overruled in 1988 (a fact not noted by Houma, which urges us to follow *The Federal*). *Black v. Red Star Towing & Transp. Co., Inc.*, 860 F.2d 30, 34 (2d Cir. 1988) (en banc) ("after sailing in Second Circuit waters for six decades, *The Federal No. 2* formally is abandoned") (citing, *inter alia*, *Savoie* and *Adams*); *see also* Grant Gilmore and Charles L. Black, **The Law of Admiralty**, § 6-18, at 318-19 & n.93j (hereinafter cited as **Gilmore and Black**); 1B **Benedict** § 47 at 4-27 (discussing criticism of *The Federal*); *Gooden v. Sinclair Refining Co.*, 378 F.2d 576 (3d Cir. 1967) (following *Waterman*); *Gore v. Clearwater Shipping Co.*, 378 F.2d 584 (3d Cir. 1967) (same); *United States v. The Tug Manzanillo*, 310 F.2d 220, 223 (9th Cir. 1962) (same); *contra*, *United States v. Gallagher*, 467 F.2d 1103 (9th Cir. 1972) (following *The Federal*).

damages (sounding in tort), from his claims against Waterman for maintenance, cure, and lost wages (sounding in contract), stating:

> [The seaman] could not have recovered maintenance and cure and wages from Reading, nor may he recover damages from Waterman. It follows that Waterman and Reading were not joint tortfeasors. In fact, Waterman committed no tort. It is not alleged that it did. Under no theory of law can [the seaman's] release to Reading release Waterman.

*Id.* at 996.

> As for Waterman's claim against Reading, the court held:

> It would seem to follow ... as a matter of logic that if the master by virtue of his contract ... with the servant is compelled to maintain and cure his servant ... the master should be permitted to recover these sums from the wrongdoer....

*Id.* at 999 (footnote omitted). In so holding, **Waterman** relied in part on Pennsylvania law (holding that an employer has a right to recover against a tortfeasor for an act depriving the employer of the employee's services). *Id.* at 1000-01. And, it also described Waterman's right against Reading as being derived from the breach of Reading's implied warranty of maintaining the railroad track "in a safe condition for the benefit of seamen leaving a ship moored to the pier" with which ship it had a contract. *Id.* at 999-1000.

Houma asserts that **Waterman** is inapplicable, claiming that it was based on Pennsylvania law, whereas this case falls under general maritime law; and because here, there was no contract between Houma and Energy. But, this argument was rejected in our circuit long ago. In following the **Waterman** rule (employers may seek reimbursement of maintenance and cure from third-party

- 9 -

tortfeasors), we need not rely on either state law or a contract, implied or express, between the shipowner and tortfeasor. Rather,

> [we] do not view the rationale of **Waterman** as limited to cases in which Pennsylvania law controls. Other courts likewise have viewed the **Waterman** case as standing for a broader rule. See, e.g., [**United States v. The Tug Manzanillo**, 190 F. Supp. 229, 232-33 (D.Or. 1960), *rev'd on other grounds*, 310 F.2d 220 (9th Cir. 1962)]. [We] similarly find unconvincing any contention that the **Waterman** case is limited to cases in which a warranty of due care by the tortfeasor is implicit in a contract between the shipowner and the tortfeasor. A fair reading of the **Waterman** case suggests that its rationale is not limited to such situations.

*Richardson v. St. Charles-St. John the Baptist Bridge & Ferry Auth.*, 284 F. Supp. 709, 714-15 n.7 (E.D. La. 1968) (Rubin, District Judge) (ferry authority could recover for maintenance and cure costs; its employee was injured by passenger's negligence); *compare **Gauthier v. Crosby Marine Serv., Inc.***, 752 F.2d 1085, 1089-91 (5th Cir. 1985) (where Louisiana law, rather than maritime law, applied because tort occurred on shore, seaman's contributory negligence was attributed to employer, thereby barring employer's indemnity action).

Indeed, our court has applied the **Waterman** rule in a number of cases not involving state law claims, and has allowed an employer recovery over against a tortfeasor of maintenance and cure. *E.g.*, **Adams**, 640 F.2d at 620-21; **Savoie**, 627 F.2d at 724; **Tri-State Oil**, 410 F.2d at 182-83. As noted, in **Adams**, the employer was partly at fault; in **Savoie**, as in this case, the employer was without fault ("innocent").

- 10 -

"Indemnification of the innocent employer is based on the commonsense principle that a party whose neglect has caused or contributed to the need for maintenance and cure payments should reimburse the cost of those payments...." *Savoie*, 627 F.2d at 723 (citing and quoting *Tri-State Oil*, 410 F.2d at 186), *cited in* *Adams*, 640 F.2d at 620-21; *accord*, *Black v. Red Star Towing & Transp. Co., Inc.*, 860 F.2d 30, 32-34 (2d Cir. 1988) (en banc) (overruling *The Federal No. 2*, 21 F.2d 313 (2d Cir. 1927), and citing *Adams* and *Savoie*). *See* 1 **Schoenbaum**, § 6-35, at 369 & nn.1-2 (citing and discussing, *inter alia*, **Waterman**, *Adams*, and *Savoie*; "employer who pays maintenance and cure to a seaman has a right to complete indemnity from an independent tortfeasor whose fault or negligence was the sole cause of the injury"). "[I]mposition of liability on the tortfeasor ... is not too `indirect' a consequence of his negligence to allow recovery. The shipowner's obligation -- imposed by the law itself -- is not so unforeseeable by a tortfeasor as to bar recovery." *Adams*, 640 F.2d at 620 & n.2 (brackets in *Adams*) (citing Grant Gilmore and Charles L. Black, **The Law of Admiralty** § 6-14 (2d ed. 1975) (hereinafter cited as **Gilmore and Black**); *Richardson*, 284 F. Supp. at 716).

### 2.

Therefore, as the district court recognized, *Adams* and *Savoie* seem to permit Energy to be reimbursed for its maintenance and cure costs. But, as noted, the key basis for Houma's challenge to reimbursing Energy lies in two additional factors: first, Bertram settled with all defendants prior to trial; and second, since the

above discussed cases were decided, our court has joined the modern trend toward proportional or comparative fault for maritime cases. *See **United States v. Reliable Transfer***, 421 U.S. 397 (1975), *discussed and followed in*, *e.g.*, ***Hardy v. Gulf Oil Corp.***, 949 F.2d 826, 833-36 (5th Cir. 1992) (applying proportional fault rules, rather than tort indemnity theories, to maritime cases); ***Loose v. Offshore Navigation, Inc.***, 670 F.2d 493, 501 (5th Cir. 1982). (As stated, the portional fault trend is also an element of Houma's challenge, as discussed in part II.D., to reimbursing 50% of the maintenance and cure, as opposed to its being only allocated 20% of the fault.)

The contention that Bertram's pre-trial settlements barred Energy's claim is based primarily on ***Hardy***, 949 F.2d at 835-36, which did not concern maintenance and cure. Hardy was employed by a contractor for ZAGOC; ZAGOC contracted also with BOS, upon whose barge Hardy was injured. Hardy sued, *inter alia*, BOS and ZAGOC, asserting claims under the Jones Act and general maritime law. ZAGOC and BOS cross-claimed against each other: ZAGOC contended that its contract with BOS required BOS to indemnify it for any damages awarded Hardy; BOS sought indemnity or contribution. 949 F.2d at 829.

Prior to trial, Hardy settled with ZAGOC, agreeing to indemnify it for any contribution claim asserted against ZAGOC, except for BOS's claim against ZAGOC. The jury found that BOS's negligence and the unseaworthiness of its barge were the sole causes of Hardy's injuries; and that ZAGOC had no responsibility to

either indemnify BOS or contribute to the damages for which BOS was liable. *Id.* While its appeal was pending, BOS settled with Hardy, leaving in issue only BOS's claims against ZAGOC. *Id.* at 828, 829. Among other things, our court concluded that the advent of proportional fault theories had limited the ability of a defendant who settled with the plaintiff after trial to recover, either through indemnity or contribution, from a defendant who had settled before trial. *Id.* at 833-36.

At bottom, Houma's contention misapprehends the parties' relationships to one another, and the nature of Energy's cross-claim. Energy's maintenance and cure obligation arises as a matter of law, through its relationship with Bertram and despite its being without fault. *E.g.*, 1B **Benedict**, § 42, at 4-5 to 4-6 (7th ed. 1993) (neither seaman's nor employer's negligence is to be considered); **Gilmore and Black** § 6-6, at 281 (comparing shipowner's liability for maintenance and cure to worker's compensation; both are independent of fault and based on employment relationship).

Second, again in contrast to *Hardy*, Energy's claim against Houma is *not* for recovery over for "the amount of *damages* [Energy] owes the plaintiff", *i.e.*, Bertram. **Hardy**, 949 F.2d at 836 (emphasis added). Rather, it is for reimbursement of maintenance and cure; and that claim is "not a derivative right through [Bertram,] but [wa]s a separate and distinct cause of action which [vested] in [Energy] when it [wa]s ascertained what sum of money [wa]s due" from Energy to Bertram. **Waterman**, 155 F.2d at 1001; *accord*, **United States v. Tug Manzanillo**, 310 F.2d 220, 222 (9th

Cir. 1962) (employer's right to recover maintenance and cure from tortfeasor accrued "the moment the [employer] paid these sums" to seaman, regardless of release between seaman and tortfeasor).

Nor could the settlements between Bertram and the defendants release one defendant from an independent claim asserted by another. In this regard, Bertram's settlements with Energy and Houma are immaterial; there has been no settlement between Houma and Energy. The Ninth Circuit reached the same result in *Tug Manzanillo*, 310 F.2d at 221, where the tortfeasor contended (as does Houma) that maintenance and cure costs were damages subsumed in its settlement with the plaintiff.

The Ninth Circuit held that a settlement between the injured seaman and the tortfeasor did not bar a claim for indemnity for maintenance and cure by the employer against the tortfeasor:

> To hold that by paying certain sums to [the employee] ... [the tortfeasor] had thereby discharged its then existing liability to the [employer], is a wholly impermissible conclusion. If A is indebted to B he cannot discharge that indebtedness by payment to C.

*Tug Manzanillo*, 310 F.2d at 222. Similarly, a release between Energy and Bertram, or Houma and Bertram, cannot bar Energy's maintenance and cure reimbursement claim against Houma.

In support of its contention that Energy cannot recover over for maintenance and cure, Houma relies also upon *Associated Elec. Coop., Inc. v. Mid-America Transp. Co.*, 931 F.2d 1266 (8th Cir. 1991). Unlike *Hardy*, *Associated Electric* does involve reimbursement for maintenance and cure. 931 F.2d at 1271-73 (citing *Adams* and *Savoie*). In *Associated Electric*, Teasley, an employee of AEC,

- 14 -

was injured while working aboard a barge owned by MATCO. *Id.* at 1267-68. AEC claimed that MATCO was solely at fault; MATCO, that AEC was negligent. *Id.* at 1268.

AEC paid Teasley maintenance and cure, but did not settle his possible damages claims. *Id.* AEC sought recovery over against MATCO for maintenance and cure (similar to claim by Energy), in addition to claims for other possible damages. *Id.* MATCO settled with Teasley; the agreement was conditioned on dismissal of AEC's claims. *Id.* The district court dismissed those claims, and approved the MATCO/Teasley settlement; AEC appealed. *Id.*

For the damages claims, the Eighth Circuit held that maritime law barred a non-settling defendant from seeking indemnity or contribution from a settling defendant. *Id.* at 1269-71 (citing cases, and discussing circuit split). Likewise, it held that AEC's cross-claim for maintenance and cure was barred by the MATCO/ Teasley settlement, rejecting AEC's contention that, even if that settlement barred its damages claims, it "d[id] not affect [AEC']s right to be reimbursed for maintenance and cure payments ... because such rights are completely independent from Teasley's damages." *Id.* at 1271. Citing **Adams** and **Savoie**, the court stated:

> We reject AEC's argument for two reasons. First, none of the cases cited by AEC involves an indemnity suit by a non-settling defendant against a settling defendant. Thus, such cases do not implicate the public policy in favor of encouraging settlements. Second, the common law cases cited by AEC refer to the employer's action for maintenance and cure payments as suits for indemnity or contribution, rather than as wholly independent actions. *See* **Adams**, 640 F.2d at 620 ("The issue, then, becomes ... whether [the settling tortfeasor] can secure *contribution* for the maintenance and

- 15 -

cure payments made necessary through both [the other tortfeasor's] and its own negligence") (emphasis added); *Savoie*, 627 F.2d at 723 (applying rule that "an innocent employer is entitled to *indemnification* from a negligent third party for payments made to an employee injured as a result of the third party's negligence") (emphasis added). Admittedly, MATCO's own pleading characterized AEC's claim for maintenance and cure payments as one for "damages." However, we interpret these admissions as generic descriptions applicable even to indemnity and contribution claims.

Accordingly, we hold that AEC's claim for maintenance and cure payments is a claim for indemnity or contribution, and is therefore barred by the same proportional fault approach applicable to AEC's other claims for indemnity or contribution.

*Id.* at 1271-72 (brackets and italics in original).

Notwithstanding the foregoing, **Adams** and **Savoie** remain controlling precedent in this circuit. "[O]ne panel may not overrule the decision, right or wrong, of a prior panel in the absence of en banc reconsideration or superseding decision of the Supreme Court." **Batts v. Tow-Motor Forklift Co.**, 978 F.2d 1386, 1393 & n.15 (5th Cir. 1992) (internal quotation marks and citations omitted). Neither has happened. We do not read the decisions by the Supreme Court as having superseded either decision. Therefore, an employer's right to recovery over for maintenance and cure is not negated by a settlement by the injured employee with the third-party tortfeasor.

Despite being bound by **Adams** and **Savoie**, we turn to the concerns expressed in **Associated Electric**, in order to demonstrate the continuing vitality of **Adams** and **Savoie** on this issue. Contrary to the concern expressed in **Associated Electric**, this does

not frustrate "the public policy in favor of encouraging settlements". 931 F.2d at 1272. A settling third-party tortfeasor should, obviously, be aware of the employer's maintenance and cure payments (Houma certainly was), and, in settling with the employee, should take into account the possibility of being required to reimburse the employer for those payments. This should prompt the employee, employer, and third-party tortfeasor to work together to reach settlement of all claims, and thus avoid any further litigation. Certainly, this is even more consistent with the public policy in favor of settlements.[5]

*Associated Electric*'s second reason for barring the employer's maintenance and cure claim appears to be that, because the employer's claim against the third-party tortfeasor for recovery of maintenance and cure was labelled a claim for "indemnity or contribution", it was the same type of claim as the employer's

---

[5] Houma was aware, throughout the district court proceedings, that Energy sought reimbursement for maintenance and cure; and, it settled with Bertram knowing that Energy's claim remained. When Houma entered into its settlement with Bertram, and he moved therefore to dismiss his claim against Houma in May 1993, Houma had been on notice for over a year (Energy's cross-claim was filed in March 1992) that Energy had been paying maintenance and cure to Bertram since the accident, and continued to pay it.

The Houma-Bertram settlement is not part of the record on appeal. Accordingly, there is no evidence before us that that settlement was intended to compensate Bertram for medical or living expenses (amounts owed him by Energy as part of its maintenance and cure obligation), rather than instead being a settlement for other damages resulting from Houma's negligence. But, even assuming *arguendo* that part of the settlement was for the grounds covered by maintenance and cure, this demonstrates why the third-party tortfeasor should take a maintenance and cure claim against it into consideration, and adjust for it, when settling with the employee, or better yet, work toward bringing about a total settlement of all claims.

claim for indemnity or contribution for the employee's general damages. Because the latter type of claim was barred by the third-party tortfeasor/employee settlement, the Eighth Circuit concluded that the former must also be barred. This analysis, however, much like Houma's argument detailed *supra*, appears to miss the critical distinction -- long recognized in this circuit -- between an employer's right to recover maintenance and cure payments, and one tortfeasor's right to recover some or all of a damage award assessed against it from another tortfeasor.

As noted, the Eighth Circuit quoted **Savoie** and **Adams** in holding that claims for recovery of maintenance and cure were also labelled "claim[s] for indemnity or contribution, and ... therefore barred by the same" reasoning that barred claims for indemnity or contribution for other damages. **Associated Electric**, 931 F.2d at 1272. As discussed, however, the obligation to pay maintenance and cure differs from a tortfeasor's liability for damages -- although a claim to recover either cost may be labelled one for indemnity or contribution. *E.g.*, **Ray v. Lykes Bros. Steamship Co., Inc.**, 805 F.2d 552, 554 (5th Cir. 1986), *cited in* **Associated Electric**, 931 F.2d at 1271. As the employer urged in **Associated Electric**, an employee's right to receive, and an employer's right to be reimbursed, maintenance and cure are rights "completely independent from [the seaman's] damages." **Id.** at 1271 (citing **Ray**). **Savoie** and **Adams** are certainly not to the contrary.

In sum, we hold, as did the district court, that Energy's claim is not barred by Bertram's pre-trial settlements. **Savoie**,

- 18 -

627 F.2d at 723, 724 (even where employee has "relinquished his other claims" against employer after receiving maintenance and cure, employer may recover for maintenance and cure costs from third-party found to have caused employee's injury); *accord*, **Great Lakes Dredge & Dock Co. v. The Tanker Robert Watt Miller**, 957 F.2d 1575, 1581-84 (11th Cir.) (not maintenance and cure case; rejecting "settlement bar" rule of **Associated Electric** and other cases; citing **Savoie**), *cert. denied*, ___ U.S. ___, 113 S. Ct. 484 (1992); **Wisconsin Barge Line, Inc. v. The Barge Chem 301**, 390 F. Supp. 1388, 1390, 1393-94 (M.D. La. 1975) (employer who voluntarily settled damages claims may not recover for damages from third-party tortfeasor, but is entitled to indemnity for maintenance and cure; unlike non-compulsory damages settlement, maintenance and cure payment is involuntary and therefore recoverable), *rev'd on other grounds*, 546 F.2d 1125 (5th Cir. 1977) (remanding for determination whether settlement amount was reasonable).

### B.

Houma challenges the amount of cure paid Bertram, asserting that there was

> no evidence of the reasonableness of the [medical] costs for which Energy now seeks reimbursement. Accordingly, there is not a finding by the Court that the costs were reasonable. Therefore it was erroneous for the Court to award those costs.

(Footnote omitted.) In support, it states that "[t]here is evidence that the treatment rendered by [Bertram's physician] was unwarranted and unnecessary and is the root of Mr. Bertram's physical problems."

- 19 -

Although the district court found that Bertram's medical "treatment was reasonable and necessary for [his] recovery", it did not find expressly that the cost of that treatment was reasonable. It did state, however, that any findings of fact not expressly made were deemed to have been made in support of its judgment. And, the judgment awards Energy the maintenance and cure it paid.[6] Therefore, we consider the district court to have found implicitly that the amount paid for medical treatment was reasonable; we review that finding only for clear error. *See **Noritake Co., Inc. v. M/V Hellenic Champion**, 627 F.2d 724, 727-28 (5th Cir. 1980); Fed. R. Civ. P. 52(a); **Tate v. American Tugs, Inc.**, 634 F.2d 869 (5th Cir. Unit A 1981) (determination of amount of maintenance is fact question). A finding is clearly erroneous when, "although there is enough evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed and that the district court could not permissibly find as it did." **Noritake**, 627 F.2d at 728 (citations omitted).

Houma bases its challenge to the amount of cure on testimony (deposition) by its witness, Dr. Weiner, who considered the medical treatment "unwarranted and unnecessary and ... the root of Mr. Bertram's physical problems". As Energy points out, however, Bertram's primary treating physician, Dr. Scheffey, testified (deposition) that the treatment was both reasonable and necessary. Dr. Scheffey based this on examinations of Bertram, Bertram's physical condition, and the fact that more conservative treatment

---

[6]    Houma does not contest the maintenance payments.

- 20 -

failed to improve Bertram's condition. The court's decision to credit Scheffey's testimony, rather than Wiener's, is not clearly erroneous. Accordingly, although the doctors were not asked whether Dr. Scheffey's fees were reasonable, we do not disturb the implicit finding that they were.

## C.

Next, Houma contends that there is "no evidence that [it] was a cause of [Bertram's] accident" and injuries resulting from the falling ladder. The district court found that, for several days prior to the accident, Houma employees had used the ladder, but that they failed to stow or secure it properly. A Houma supervisor was asked to secure the ladder; and, although it was tied to a walkway grating, a post-accident investigation revealed that the rope securing it had been cut. Further, the district court found that the top of the ladder had never been properly secured. Based on these findings, *inter alia*, the district court apportioned 20% of the fault to Houma. (As noted, Freeport, which did not appeal, was also found 20% at fault.) But, because Bertram failed to use an alternative, safer route (by which he could have avoided the ladder), and because it was "probable that a portion of Mr. Bertram's life jacket caught a rung of the ladder, causing it to fall on ... him", the district court apportioned 60% of the fault to Bertram. Houma disputes the findings that it owned the ladder and that it failed to stow or secure it; but it does not dispute

that its workers used the ladder, or that they were directed to secure it.[7]

In admiralty cases, the district court's rulings on "negligence, cause, and proximate cause are findings of fact". *E.g.*, **Gavagan v. United States**, 955 F.2d 1016, 1019 (5th Cir. 1992) (citing cases, including **Johnson v. Offshore Express, Inc.**, 845 F.2d 1347, 1352 (5th Cir.) ("Questions of negligence and causation in admiralty cases are treated as fact questions...."), *cert. denied*, 488 U.S. 968 (1988)). Again, such findings are upheld unless, reviewing the record as a whole, we are "`left with the definite and firm conviction that a mistake has been committed'". *Id.* (quoting **Noritake**, 627 F.2d at 728).

Freeport employees testified that Houma brought the ladder to the platform. The record contains ample evidence that the ladder was used by Houma; that on several occasions, Freeport employees asked Houma's supervisor to secure it; and that it was not properly secured or stowed on the evening of the accident. Therefore, the findings that Houma failed to stow the ladder properly, and assigning it 20% of the fault are not clearly erroneous.[8]

---

[7]    Houma also again contends, as discussed *supra*, that Bertram's injuries were caused by the medical treatment he received. We have already rejected this assertion.

[8]    In its reply brief, Houma asserts for the first time that some fault should have been apportioned to Energy. Generally, we do not address such belated claims. We decline to do so here.

As discussed, consistent with the foregoing apportionment of fault, and relying upon **Adams** (employer partly at fault), the district court entered judgment that Freeport and Houma each reimburse Energy for 20% of the maintenance and cure; but, on Energy's motion, and in reliance on **Savoie** (employer without fault), the judgment was amended to require each to instead reimburse Energy for 50% of the maintenance and cure. Houma asserts alternatively that, consistent with its apportioned fault, it should be required to reimburse Energy for only 20% of the maintenance and cure. This contention turns on our relatively recent adoption, discussed *supra*, of proportional fault. *See* **McDermott, Inc. v. AmClyde**, 114 S. Ct. 1461 (1994); **Reliable Transfer**, 421 U.S. 397; **Loose**, 670 F.2d at 500-01; *compare* **Savoie**, 627 F.2d 722 (not discussing **Reliable Transfer** proportional fault concepts); *see also* **Coats v. Penrod Drilling Corp.**, 5 F.3d 877, 889-90 (5th Cir.) (discussing application of joint and several liability to maritime co-defendants in comparative fault system), *reh'g en banc ordered*, 20 F.3d 614 (5th Cir. 1994). Our review is *de novo*.

As stated, in requiring the 50% reimbursement, the district court relied on **Savoie**, 627 F.2d 722, 724, which allowed complete indemnity of the employer by a third-party tortfeasor. **Savoie** held:

> Because the employer will have to pay maintenance and cure regardless of the existence or degree of his employee's neglect, a negligent third party who caused or contributed to the employee's injury

should reimburse the employer for this inevitable expense, even though the employee was partially to blame. *As between the innocent employer and the partially negligent third party, the latter should bear the burden of such payments* in the same manner a joint tort-feasor is liable to the injured victim of concurrent delicts....

***

Because [the employer] will have to pay full maintenance and cure to [the seaman, regardless of his negligence], [the tortfeasor] must reimburse [the employer] *for the entire payment made*.

627 F.2d at 724 (emphasis added). The district judge stated that, were this a case of first impression, he would not have required full reimbursement, but that he was bound by controlling precedent -- *Savoie*.

Again trying to wiggle off the hook of binding precedent, Houma maintains that *Savoie* is not controlling, noting that *Savoie* -- decided in 1980 -- did not discuss the earlier extension of proportional fault principles to maritime cases. *Id.; see, e.g.*, *Loose*, 670 F.2d 493, 501 (5th Cir. 1982) (discussing Fifth Circuit's adoption of comparative fault system, which "eliminates the doctrine of contributory negligence ... [and] apportions fault among joint tortfeasors in accordance with a precise determination, not merely equally or all-or-none"); *Harrison v. Flota Mercante Grancolombiana, S.A.*, 577 F.2d 968, 981-82 (5th Cir. 1978) (court should consider "the concept of proportional fault" in maritime cases). Thus, we must examine this aspect of *Savoie* in light of *Reliable Transfer* and its progeny.

As noted, in originally ordering each tortfeasor to reimburse maintenance and cure only to the extent of their assigned fault

- 24 -

(20% each), the district court relied upon **Adams**, 640 F.2d at 621 (1981). The answer to whether **Savoie** still controls is found in **Adams**. Unlike **Savoie**, it anticipates **Loose**'s more explicit discussion of proportional fault principles. *See* **Loose**, 670 F.2d at 500-01.

In **Adams**, Eymard contracted with Texaco to service its offshore operations; Adams, an Eymard employee, was injured while working on Eymard's crewboat. 640 F.2d at 619. He sued Eymard and Texaco; both cross-claimed for indemnity and contribution. Prior to trial, Adams settled with Eymard; the jury awarded damages to Adams, with Adams adjudged 70% negligent and Eymard and Texaco each 15%. *Id.* The cross-claims were tried to the court; Texaco was ordered to pay Eymard 15% of its maintenance and cure costs by way of contribution.

In affirming Texaco's contributing 15% to Eymard, our court noted that, even where the seaman is negligent, a "non-negligent shipowner is still entitled to indemnity from a third-party tortfeasor. **Savoie**, *supra*". *Id.* at 620. It noted that "[t]his court has already held [in **Savoie**] that a tortfeasor is required to *indemnify* the *non-negligent* shipowner for maintenance and cure payments *that result from the tortfeasor's negligence*." *Id.* (emphasis added). But, the court noted that **Adams** presented a different situation, because not only the third-party, but also the shipowner, was negligent. In such a case, the **Adams** court held,

> [t]his rationale [of **Savoie**] equally supports the conclusion that a *concurrently negligent* tortfeasor should *proportionately contribute* to maintenance and cure paid by a negligent shipowner when the

> latter's negligence only concurrently contributed
> to the seamen's injury.

*Id.* at 621 (citing proportional fault cases) (emphasis added). The court held that, because both were concurrently negligent, Texaco was liable to Eymard for the "costs of those [maintenance and cure] payments *to the extent occasioned by its fault*." *Id.* (emphasis added); *accord*, **Black**, 860 F.2d at 32-34 (discussing innocent shipowner's right to indemnification from tortfeasor, versus negligent shipowner's right to contribution from tortfeasor in proportion to that party's negligence; citing **Adams** and **Savoie**).

As noted, in **Adams** both the shipowner and Texaco were found 15% at fault; the seaman, 70%. Our court concluded that Texaco was required to contribute only 15% of the maintenance and cure to the shipowner. Were we to use the same method of apportionment in this case, Houma would be required to contribute only 20% of the maintenance and cure, because this was its percentage of fault. As reflected above, however, what distinguishes this case from **Adams** is that Energy was not at fault. Thus, as the district court held, this case is controlled by **Savoie**, where only the seaman and the third-party were at fault. Although the third-party was not 100% at fault (it shared fault with the seaman), it was nonetheless required to reimburse all of the maintenance and cure to the innocent shipowner. **Savoie**, 627 F.2d at 724.

Read together, **Adams** and **Savoie** seem to advance a policy choice as to which party bears the burden of a seaman's negligence when an employer seeks recovery over for maintenance and cure. When the employer is partially at fault, the seaman's negligence is

- 26 -

imputed to the employer.  This is consistent with the very basis for the maintenance and cure obligation -- the employment relationship.  Between a negligent employer and a negligent third-party, the seaman's portion of fault is imputed to the employer.  But, when the employer is fault-free, it may recover all of the maintenance and cure from the negligent third-party(ies), even though the third-party shares fault with a negligent seaman.  Therefore, Houma and Freeport, each only 20% at fault, must nevertheless totally reimburse the maintenance and cure.

In sum, neither *Adams*, nor subsequent proportional fault cases, including *Loose*, disturb *Savoie*'s holding that an innocent shipowner is entitled to full reimbursement for maintenance and cure from a third-party tortfeasor, even though the employee was also at fault.  Accordingly, as did the district court, we must follow *Savoie*.

III.

For the foregoing reasons, the judgment of the district court is

**AFFIRMED.**