# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 13, 2021

Lyle W. Cayce
Clerk

No. 20-30765

Sonia Poincon,

*Plaintiff—Appellee*,

*versus*

Offshore Marine Contractors, Incorporated,

*Defendant Third Party Plaintiff—Appellant*,

*versus*

REC Marine Logistics, L.L.C., REC Marine,

*Third Party Defendant—Appellee*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:18-CV-10251

Before Wiener, Elrod, and Higginson, *Circuit Judges*.
Jennifer Walker Elrod, *Circuit Judge*:

Offshore Marine Contractors, Inc.'s employee Sonia Poincon injured her neck in a collision caused by an REC Marine Logistics, L.L.C. vessel in 2015. After Poincon injured her neck again by slipping and falling on an

No. 20-30765

Offshore Marine vessel in 2018, Offshore Marine sought contribution from REC for Poincon's maintenance and cure. The district court granted summary judgment to REC. Because under governing Fifth Circuit precedent Offshore Marine has brought forth genuine issues of material fact as to whether REC caused in part Poincon's need for maintenance and cure, we REVERSE and REMAND.

## I.

In 2015, an REC vessel collided with an Offshore Marine liftboat. Sonia Poincon was working for Offshore Marine as a cook aboard the liftboat at the time. The collision threw her against a cabinet, injuring her head and neck.

She was taken to a doctor on shore and diagnosed the same day with a mild cervical strain and contusion. She did not seek further medical treatment after that out of fear of losing her job. She testified, however, that she continued to feel pain in her neck radiating down to her left hand in 2018. She worked through the pain and did not receive maintenance and cure for that accident.

In 2018, Poincon was working aboard another Offshore Marine vessel when she slipped and fell while attempting to clear ice from the floor of the vessel's walk-in freezer. Immediately, pain shot up her neck and down her back. Poincon testified that this pain was the same type of pain that she had been experiencing since the 2015 REC collision, but now more intense: "When I fall, I felt like my whole spine shoot out of my head." At another point, though, Poincon declared that this new pain was "severe, constant and unique from any type of neck or back pain that I had experienced before the February 7, 2018 incident." She also said that she experienced "headaches unlike any headaches I had experienced before the February 7, 2018 incident."

No. 20-30765

Poincon sought medical treatment for her fall. She related to her doctor the details of her 2015 injury and the subsequent ongoing symptoms. Her doctor observed that "[a]s a result of two separate work-related accidents on a ship, the patient sustained injuries primarily to the cervical paraspinal region on the left, causing cervicogenic headaches, pain in the cervical paraspinal area radiating down the left upper extremity." Based in part on the results of an MRI of Poincon's neck, the doctor concluded that the force from Poincon's 2018 fall "aggravated the cervical injuries from [her] previous [accident] with headaches again reported, severe neck pain, and pain down the left arm." As part of her ongoing treatment, Poincon underwent surgery on her neck in October 2018 and another surgery on her lower back in May 2019.

Poincon sued both Offshore Marine and REC. As a Jones Act seaman, Poincon asserted a Jones Act negligence claim, an unseaworthiness claim, and a claim for maintenance and cure against her employer Offshore Marine for her 2015 and 2018 injuries. Poincon asserted a single negligence claim against REC for her 2015 injuries.[1] Poincon's complaint stated that "[j]urisdiction of [the district court] is based on the Jones Act (46 U.S.C. § 30104, *et. seq.*), and under the general maritime law." It stated further that Poincon "desires and is entitled to a trial by jury on the issues sued upon herein."

The district court severed Poincon's claims related to the 2015 accident from her claims related to the 2018 accident because "there exist no common questions of fact concerning the *liability* of the distinct sets of defendants involved in the two incidents." (emphasis in original). This left

---

[1] REC has settled with Poincon on this claim.

No. 20-30765

Offshore Marine as the sole defendant in the case concerning the 2018 accident.

Offshore Marine then filed a third-party complaint against REC seeking contribution to maintenance and cure paid for the 2018 injury. In response, REC moved for summary judgment on the third-party complaint. The district court granted summary judgment in favor of REC, concluding that the 2018 accident was not a foreseeable consequence of the 2015 collision and that the 2018 accident "was an intervening and superseding cause that cut off any liability REC may have had for maintenance and cure" related to the 2015 injury. The district court denied Offshore Marine's subsequent motion to reconsider. Offshore Marine timely appealed.

## II.

Before proceeding to the merits, we must assure ourselves of appellate jurisdiction. Offshore Marine initially premised jurisdiction for this interlocutory appeal on 28 U.S.C. § 1292(a)(3), which authorizes appeals of interlocutory orders "determining the rights and liabilities of the parties to admiralty cases." After initial briefing, we noticed a possible jurisdictional defect, so we asked the parties to submit supplemental briefs on whether § 1292(a)(3) applies to this case. They did so. After oral argument, Offshore Marine moved for the district court to certify its summary judgment order as final under Federal Rule of Civil Procedure 54(b), and the district court did so. We hold that this is a civil, rather than admiralty, case, and so our interlocutory appellate jurisdiction comes from the district court's Rule 54(b) certification, not § 1292(a)(3).

In her complaint, Poincon asserted a statutory claim under the Jones Act and maritime claims under the general maritime law. *See Powell v. Offshore Navigation, Inc.*, 644 F.2d 1063, 1068 (5th Cir. Unit A May 1981) ("A Jones Act claim is therefore a different cause of action altogether from

No. 20-30765

claims that can be brought in federal court under admiralty jurisdiction; the parameters of this cause of action are defined by the statute and not by the general maritime law."). Plaintiffs asserting maritime claims retain their right to pursue available civil remedies and invoke any applicable non-admiralty bases for federal jurisdiction. 28 U.S.C. § 1333 (conferring admiralty jurisdiction but "saving to suitors in all cases all other remedies to which they are otherwise entitled"). Poincon therefore had the option to file her complaint either on the "civil side" of the federal courts under federal question jurisdiction, *id.* § 1331, or on the "admiralty side" under federal admiralty jurisdiction, *id.* § 1333.[2] *See Bodden v. Osgood*, 879 F.2d 184, 186 (5th Cir. 1989); *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 380–81 (1959).

When a plaintiff asserts claims that can be brought under either the civil or admiralty jurisdiction of the federal courts, the plaintiff must elect admiralty jurisdiction under Federal Rule of Civil Procedure 9(h) to proceed in admiralty. *Bodden*, 879 F.2d at 186. The complaint does not have to explicitly cite to Rule 9(h), but it must at least include "a simple statement" invoking admiralty jurisdiction. *Id.* (quoting *T.N.T. Marine Serv., Inc. v. Weaver Shipyards & Dry Docks, Inc.*, 702 F.2d 585, 588 (5th Cir. 1983)).

Here, Poincon did not cite to Rule 9(h). We therefore look to the "totality of the circumstances" to determine if Poincon made the required "simple statement" to "properly invoke the district court's admiralty

---

[2] Traditionally, the term "admiralty" refers to the courts, jurisdiction, and procedure of maritime law, and "maritime" refers to the substantive law itself. David W. Robertson, Steven F. Friedell & Michael F. Sturley, *Admiralty and Maritime Law in the United States* 4 (3d ed. 2015). That distinction has faded over time, and "admiralty" and "maritime" are now used largely synonymously. *Id.* The distinction is helpful in this context, though, to conceptually separate the claims Poincon states (both maritime and statutory) from the jurisdiction she invokes (either admiralty or civil).

jurisdiction." *Id.*; *accord T.N.T. Marine Serv.*, 702 F.2d at 587–88; *see also Apache Corp. v. Glob. Santa Fe Drilling Co.*, 435 F. App'x 322, 325 (5th Cir. 2011).

Poincon's original complaint included the following jurisdictional statement:

> Jurisdiction of this Honorable Court is based on the Jones Act (46 U.S.C. § 30104, *et. seq.*), and under the general maritime law for general maritime negligence and unseaworthiness and for maintenance and cure. Venue is proper in accordance with 28 U.S.C. § 1391(b)(1).

The complaint also requests a jury, which is not available in admiralty. *Powell*, 644 F.2d at 1070 ("There is not the slightest indication of any intention, or of any professional or lay demands for a change in the time-sanctioned mode of trying suits in admiralty without a jury . . . ." (quoting *Romero*, 358 U.S. at 369)).

Poincon's citation to the Jones Act as a basis for jurisdiction signals a desire to rely on federal question jurisdiction under 28 U.S.C. § 1331. *See Romero*, 358 U.S. at 381. Her jury demand likewise signals a desire to proceed on the civil side of the district court.[3] *See Borne v. A & P Boat Rentals No. 4, Inc.*, 755 F.2d 1131, 1133 (5th Cir. 1985). The maritime claims Poincon asserts are all *in personam* claims rather than *in rem* claims, so none of her claims fall exclusively within admiralty. *See T.N.T. Marine Serv.*, 702 F.2d at 587–88 (noting that the plaintiff stated an *in rem* claim against the Tug *OCEAN WIND*, which "falls within the exclusive admiralty jurisdiction"); *see also*

---

[3] Requesting a jury is not by itself dispositive. Had Poincon made a proper Rule 9(h) designation and proceeded in admiralty, the district could have simply denied Poincon's jury demand. *Bodden*, 879 F.2d at 186 ("Generally, merely requesting a jury trial does not change an admiralty claim, identified as such, to a non-admiralty claim. In such cases the district court should simply deny the request.").

*Luera v. M/V Alberta*, 635 F.3d 181, 190–91 (5th Cir. 2011) (permitting a plaintiff to proceed under the court's civil diversity jurisdiction for *in personam* maritime claims while proceeding in admiralty for *in rem* maritime claims). Nowhere in her complaint is there an indication that she wishes to proceed in admiralty. In light of the totality of the circumstances, it is clear that Poincon did not elect admiralty jurisdiction, and therefore this is a civil case. *See, e.g.*, *Bodden*, 879 F.2d at 186; *Borne*, 755 F.2d at 1133; *see also Russell v. Jack Jackson, Inc.*, No. 02-31036, 2003 WL 21683485, at *2 (5th Cir. July 18, 2003); *Bayham v. Grosse Tete Well Serv., Inc.*, 510 F. App'x 329, 329–30 (5th Cir. 2013); *Lejano v. Soriamont S.S. Agencies, Inc.*, 33 F. App'x 704, at *3 (5th Cir. 2002).

The fact that Offshore Marine brought a maritime third-party claim against REC for contribution to Poincon's maintenance and cure does not change this result. Just like Poincon's maritime claims against Offshore Marine, Offshore Marine's contribution claim can be brought on the civil side of the federal courts based on the federal question jurisdiction conferred by Poincon's Jones Act claim. *See Romero*, 358 U.S. at 380–81; *Fitzgerald v. U.S. Lines Co.*, 374 U.S. 16, 20–21 (1963). Moreover, the decision whether to proceed in admiralty belongs to Poincon as the plaintiff. *Harrison v. Flota Mercante Grancolombiana, S.A.*, 577 F.2d 968, 987 (5th Cir. 1978). If we were to allow a defendant to re-designate a case as an admiralty case simply by seeking an interlocutory appeal under § 1292(a)(3), we would "emasculate the election given to the plaintiff by Rule 9(h)" and jeopardize the plaintiff's Seventh Amendment right to a jury trial. *Id.*; *see Bodden*, 879 F.2d at 186; *see also Fitzgerald*, 374 U.S. at 20–21. Simply put, Offshore Marine's appeal does not undermine Poincon's election.

"Since [Poincon]'s action does not come within the district court's admiralty jurisdiction and because the order from which appeal is taken does not dispose of all claims and parties, [Federal Rule of Civil Procedure] 54(b)

governs any appeal of the district court's decisions." *Bodden*, 879 F.2d at 186. Under Rule 54(b), district courts "may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b); *accord Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 327–28 (5th Cir. 2009).

Offshore Marine moved for the district court to expressly certify its summary judgment order in favor of REC as a final order under Rule 54(b). The district court did so, and we supplemented the record on appeal with that order. Accordingly, even though we do not have jurisdiction under § 1292(a)(3)'s special admiralty provision, we do have jurisdiction to proceed with this appeal based on the district court's Rule 54(b) certification. *Cf. Metallurgical Indus., Inc. v. Fourtek, Inc.*, 771 F.2d 915, 916 (5th Cir. 1985). Rule 54(b), rather than § 1292(a)(3), is the proper route to appellate jurisdiction over appeals of interlocutory decrees in civil cases presenting maritime claims.

## III.

"We review a grant of summary judgment de novo, applying the same standard as the district court." *Combo Mar., Inc. v. U.S. United Bulk Terminal, LLC*, 615 F.3d 599, 604 (5th Cir. 2010) (quoting *QBE Ins. Corp. v. Brown & Mitchell, Inc.*, 591 F.3d 439, 442 (5th Cir. 2009)). Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Brackeen v. Haaland*, 994 F.3d 249, 290 (5th Cir. 2021) (*en banc*) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In reviewing the record, we

view "all the facts and evidence in the light most favorable to the non-movant." *Ortega Garcia v. United States*, 986 F.3d 513, 524 (5th Cir. 2021).

## IV.

The district court granted summary judgment to REC by relying on its own new rule for contribution claims involving multiple accidents: "a first accident's maintenance and cure obligation ends where a second accident's begins."   This new statement of law foreclosed Offshore Marine's contribution claim against REC because the 2018 accident succeeded the 2015 accident caused by REC.  The district court, however, erred by adopting a new rule of maritime law because our precedents, which analyze contribution claims under familiar tort principles of causation, ably address a sequence of accidents such as this.  Under our governing precedent, Offshore Marine has established a genuine issue of a material fact, and therefore summary judgment is improper.

## A.

On appeal, both parties agree that three cases—*Bertram*, *Adams*, and *Savoie*—developed the right of maritime employers to seek contribution to maintenance and cure in the Fifth Circuit and that those cases govern here. *Bertram v. Freeport McMoran, Inc.*, 35 F.3d 1008, 1013 (5th Cir. 1994); *Adams v. Texaco, Inc.*, 640 F.2d 618 (5th Cir. Unit A Mar. 1981); *Savoie v. Lafourche Boat Rentals, Inc.*, 627 F.2d 722 (5th Cir. Unit A 1980).  In the view of Offshore Marine, the district court erred by creating a new rule of law unmoored from these governing cases.  REC counters that the district court, despite its clear statements to the contrary, simply applied the *Bertram*, *Adams*, and *Savoie* rule to correctly render judgment in its favor.

The district court, however, approached this case as a novel set of facts requiring new law.  It "searched in vain" for a perfectly factually analogous case in our caselaw and, having come up empty, made its new rule:

The clearest way, then, to sort responsibility for an injured seaman's maintenance and cure as between a shipowner/employer and a third-party tortfeasor is on an accident-by-accident basis, analyzing each accident—and the maintenance and cure incurred or paid for the same—as a discrete, distinct, and self-contained unit. In other words, a first accident's maintenance and cure obligation ends where a second accident's begins.

In crafting this new rule, the district court departed from the clear law governing contribution claims in this circuit: a third party is liable for an employer's expense of maintenance and cure to the extent that the third party's negligence "caused or contributed to the employee's injury" and need for maintenance and cure. *Savoie*, 627 F.2d at 724; *accord Bertram*, 35 F.3d at 1013; *Adams*, 640 F.2d at 620–21; *In re 4-K Marine, L.L.C.*, 914 F.3d 934, 938 (5th Cir. 2019). Thus, to succeed on a claim for contribution, the maritime employer must show (i) negligence and (ii) causation. *Bertram*, 35 F.3d at 1013; *In re 4-K Marine*, 914 F.3d at 938. The negligence element of a contribution claim is relatively straightforward, particularly in collision cases: did the third-party breach its duty of care? *See Combo Mar.*, 615 F.3d at 604–05 (relating the presumption that a drifting or moving vessel is at fault in an allision or in a collision with a stationary vessel). The causation element proves more difficult, particularly when there may be a superseding cause. *See id.* at 606.

Although a seaman's maintenance-and-cure claim against the seaman's maritime employer "is implied in the employment contract between" the two, a maritime employer's claim against a third party for contribution to the expenses of maintenance and cure arises from the principles of common law tort adopted by the general maritime law. *Bertram*, 35 F.3d at 1013 (quoting *Brister v. A.W.I., Inc.*, 946 F.2d 350, 360 (5th Cir. 1991)). In particular, the "common law negligence doctrines of proximate

causation and superseding cause apply" to maritime claims. *Stolt Achievement, Ltd. v. Dredge B.E. LINDHOLM*, 447 F.3d 360, 367 (5th Cir. 2006) (citing *Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 836–39 (1996)). Familiar tort principles thus govern causation in claims for contribution to maintenance and cure. "Questions of causation in admiralty are questions of fact," and they are best left to the factfinder—in this case, a jury—when there is a genuine dispute. *Stolt Achievement*, 447 F.3d at 367.

Instead of applying this law to the causation question in this case, the district court crafted its new rule that, as a matter of law, a second accident relieves a third party of liability for contribution to maintenance and cure. According to the district court, "[t]he difficulties posed by applying the *Adams/Savoie/Bertram* regime to the different factual circumstances presented by two separate accidents (including different parties, injuries, fault, causation, shares of fault, etc.) are intractable and could be insurmountable."

The district court's pragmatic concern is unfounded. Complicated questions of fact are routinely submitted to the factfinder. For example, in *Stolt Achievement*, an *in rem* action, the judge as factfinder ably parsed complicated fact disputes—such as the intensity of one ship's bow wave, the degree of the other ship's sheer, and the effect of both ships' speed and positioning—to apportion fault for a collision in the Houston Ship Channel. 447 F.3d at 362–63. Similarly, in *Davis v. Odeco, Inc.*, the plaintiff alleged that exposure to hydrocarbons while aboard the defendant's vessels caused in part the plaintiff's Goodpasture's Syndrome. 18 F.3d 1237, 1239 (5th Cir. 1994). The jury, "entitled to infer causation from unexplained events," decided the complicated medical causation question in the plaintiff's favor and awarded damages under the Jones Act for negligence. *Id.* at 1242–43, 1247–48.

There is no reason to doubt that a jury, guided by tort principles, can navigate even the choppiest causation question. The potential complexity of Offshore Marine's case for causation simply provides no basis for taking that fact question away from the jury. *Cf., e.g.*, *United Gas Pub. Serv. Co. v. Texas*, 303 U.S. 123, 140 (1938) ("[W]e have never held that it is beyond the power of the state to provide for the trial by a jury of questions of fact because they are complicated. Cases at law triable by a jury in the federal courts often involve most difficult and complex questions . . . ."); *La. Generating, L.L.C. v. Ill. Union Ins. Co.*, 831 F.3d 618, 634 (5th Cir. 2016) ("We discern a genuine dispute of material fact in this complicated back-and-forth. Thus, summary judgment was improper . . . .").

The district court justified its new rule in part on the principle of "superseding cause," but this makes the district court's departure from precedent especially problematic because its rule effectively absolves REC of its burden of proving the superseding-cause affirmative defense at trial. *See, e.g.*, *Michaels v. Avitech, Inc.*, 202 F.3d 746, 752 (5th Cir. 2000); *see also Stolt Achievement*, 447 F.3d at 367–68. Typically, the defendant has the initial burden of demonstrating that a superseding cause cuts off its liability for an injury. *Michaels*, 202 F.3d at 752. Under the district court's new rule, the plaintiff would have to preemptively establish that a subsequent accident, if any, is not a "second accident" within the contemplation of the district court's rule. Such burden shifting departs from the simple negligence-and-causation showing required by *Bertram*, *Adams*, and *Savoie*. *See Bertram*, 35 F.3d at 1012–13 (first citing *Savoie*, 627 F.2d at 723; and then citing *Adams*, 640 F.3d at 620).

In short, the district court erred by adopting its own new rule instead of analyzing REC's summary judgment motion according to governing Fifth Circuit precedent. When a third party injures a seaman in an initial accident and a subsequent accident then aggravates that injury, giving rise to the need

for maintenance and cure, the subsequent accident raises the fact-bound question of the extent to which the initial accident caused the need for maintenance and cure. Under longstanding Fifth Circuit precedent, familiar tort principles of causation—including the affirmative defense of superseding cause—govern the result.

## B.

Offshore Marine has established a genuine dispute of material fact as to whether REC caused in part Poincon's need for maintenance and cure. *See* Fed. R. Civ. P. 56(a); *Savoie*, 627 F.2d at 723–24. In its motion for summary judgment, REC pointed to an absence of evidence of causation and also asserted a superseding-cause affirmative defense. Once REC pointed to an absence of evidence of causation, the burden shifted to Offshore Marine to offer some evidence that raises a genuine dispute. *In re La. Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017) (citing *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994)). Since REC bears the burden of proving its affirmative defense at trial, *see Michaels*, 202 F.3d at 752, REC "bears the initial responsibility of demonstrating the absence of [a genuine dispute] of material fact with respect to" superseding cause, *Lindsey*, 16 F.3d at 618. Offshore Marine has met its burden, but REC has not.

Offshore Marine points to three main pieces of evidence to support its contention that the 2018 slip and fall aggravated Poincon's 2015 injury. First, in her deposition Poincon testified that she experienced continuing neck pain from 2015 onward and that her 2018 fall intensified that same neck pain. Second, the physician who treated Poincon recorded in his notes that the 2018 fall "aggravated the cervical injuries" from the 2015 collision. Third,

Offshore Marine's proposed expert opined in his report that "the 2015 accident [was] the reason for her cervical issues."[4]

Offshore Marine's evidence, if credited, would allow a finder of fact to conclude that REC caused Poincon's neck injury in 2015 and that the injury was later aggravated in 2018.  Aggravation of a prior injury can be the basis for a contribution claim.  *See* 1B *Benedict on Admiralty* § 47 (2020) ("Where a seaman is injured aboard one vessel and subsequently the injury becomes aggravated or reactivates on another vessel or vessels, all vessels involved are liable for maintenance and cure equally.  However, if the injury was caused by the negligence or unseaworthiness of the first vessel, the later vessels may be entitled to reimbursement from the first vessel for their maintenance and cure payments."); 1 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 6.35 (6th ed. 2018); *see also Gauthier v. Crosby Marine Serv., Inc.*, 499 F. Supp. 295, 297–98, 300 (E.D. La. 1980), *aff'd*, 752 F.2d 1085 (5th Cir. 1985); *Gooden v. Sinclair Refin. Co.*, 378 F.2d 576, 581 (3d Cir. 1967); *Gore v. Clearwater Shipping Corp.*, 378 F.2d 584, 586–87 (3d Cir. 1967). Offshore Marine has therefore demonstrated a genuine dispute as to a material fact.

REC, conversely, has not shown the absence of a genuine dispute as to its superseding-cause affirmative defense.  "The superseding cause doctrine applies where the defendant's negligence in fact substantially contributed to the plaintiff's injury, but the injury was actually brought about

---

[4] REC criticizes Offshore Marine's proposed expert testimony as incompetent summary judgment evidence because the report is unsworn.  *Cf.* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."). Offshore Marine, however, did not need to produce an admissible form of the expert's testimony to overcome summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  It is enough that the evidence can be made admissible for trial.  *See id.*  REC has not supported its flat assertion that it cannot be.

by a later cause of independent origin that was not foreseeable." *Stolt Achievement*, 447 F.3d at 367–68.

On appeal, REC argues that there is no evidence that Poincon would have required treatment for her 2015 neck injury without the subsequent 2018 injury. But that assertion slightly misstates the superseding-cause issue. Offshore Marine must show that REC in some part caused the need for maintenance and cure. *Bertram*, 35 F.3d at 1014 ("[A] party whose neglect has caused or contributed to the need for maintenance and cure payments should reimburse the cost of those payments." (quoting *Savoie*, 627 F.2d at 723)). It is plausible that if Poincon had not suffered her 2015 neck injury from the REC collision, her 2018 slip and fall would not have injured her neck to the point of needing maintenance and cure. In that sense, the 2015 collision would be a proximate cause of the need for maintenance and cure— *i.e.*, the 2015 collision caused the injury and the 2018 slip and fall aggravated it. *Cf. Michaels*, 202 F.3d at 751 (determining that a genuine dispute of material fact existed as to whether a pilot's negligence was the sole proximate cause of a malfunctioning airplane's crash).

Poincon's deposition, her medical records, and Offshore Marine's proposed expert's report support the conclusion that Poincon had the same neck injury from the time of the 2015 injury onward, and that the 2018 slip and fall simply worsened it to the point of Poincon needing maintenance and cure. Because there is a genuine dispute here, REC has not shown that it is "entitled to judgment as a matter of law" on its superseding-cause affirmative defense. Fed. R. Civ. P. 56(a).

\*　　\*　　\*

For the reasons set forth above, the judgment of the district court is REVERSED, and the case is REMANDED for further proceedings consistent with this opinion.