**George H. GELE (Mrs. Patricia Kellog Gele, Substituted in the place instead of George Gele, deceased), Plaintiff-Appellee, Cross Appellant,**

v.

**B. A. WILSON, etc., et al., Defendants-Cross Appellees,**

**Chevron Oil Company and The Travelers Insurance Co., Defendants-Appellants, Cross Appellees.**

**No. 79–1426.**

United States Court of Appeals, Fifth Circuit.

April 28, 1980.

McLoughlin, Barranger, Provosty & Melancon, Lloyd C. Melancon, New Orleans, La., for Chevron Oil Co.

Fred E. Salley, New Orleans, La., for Travelers Insurance Co.

Ralph E. Smith, New Orleans, La., for Henry Herr & Centennial Ins. Co.

John F. Fox, Jr., Ralph E. Smith, New Orleans, La., for B. A. Wilson, et al.

Before COLEMAN, Chief Judge, and REAVLEY and ANDERSON, Circuit Judges.

REAVLEY, Circuit Judge:

This maritime collision case comes to us for a second time, having previously been remanded by another panel of this court for an allocation of comparative fault among the parties. *Gele v. Chevron Oil Co.*, 574 F.2d 243 (5th Cir. 1978). George Gele [1] was injured on the night of May 29, 1971, when the pleasure craft in which he was riding, TIKI TOO, collided with an eighteen-inch diameter, dark metal flare pipe protruding ten to fifteen feet above the water about 100 yards away from a Chevron gas production platform in the Gulf of Mexico. The flare pipe was neither lighted nor marked with any reflective material. The TIKI TOO was planing at about fifteen to sixteen knots when it collided with the flare pipe. One of Gele's cohorts on the fishing junket, Henry Herr, was at the controls.

In its first judgment previously appealed to this court, the trial court found Chevron solely liable for the collision and awarded Gele $75,000 in damages. On remand, based upon this court's ruling that Herr had also been culpable in operating the TIKI TOO at an imprudent speed, the district court, sitting without a jury, apportioned the $75,000 liability according to its determination of the comparative fault of Chevron and Herr, at 80% for Chevron and 20% for Herr and his insurers, Centennial Insurance Company and Travelers Insurance Company. Chevron was further ordered to pay interest on its 80% of the judgment amount from the date of the original judgment, July 11, 1975. Interest on Herr's 20% was to run only from the date of the second judgment.

Chevron comes to us attacking the 80%–20% allocation of liability. The plaintiff, Mrs. Gele, complains of the imposition of interest on Herr's 20% only from the date of the judgment on remand, arguing that interest on the entire $75,000 should run from the date of the initial decree in which her husband and predecessor in interest had been adjudged to be entitled to this amount. We find merit in neither challenge and affirm the judgment of the district court.

### I.

The allocation of fault in maritime collision cases by a trial court, sitting with-

---

1. Just prior to the decision in the previous appeal in this case, George H. Gele died, and his widow, Patricia Kellog Gele, was substituted.

out a jury in admiralty, is a question of fact to be set aside only if clearly erroneous. *Seemann v. Berger*, 556 F.2d 726, 727 (5th Cir. 1977). *Accord, Getty Oil Co. v. SS Ponce De Leon*, 555 F.2d 328, 334–35 (2d Cir. 1977). *See McAllister v. United States*, 348 U.S. 19, 20, 75 S.Ct. 6, 8, 99 L.Ed. 20 (1954). Thus, we are to disturb the district court's apportionment only if, upon review of the entire record, we are "left with a definite and firm conviction that a mistake has been committed." *Id.*

The district court found that, while the TIKI TOO's speed may have been imprudent, it was not "reckless" or even "careless" under the circumstances. Herr admitted being aware of the presence of obstacles like flare pipes and buoys in the area in which the TIKI TOO struck the flare. Nonetheless, on the night of the collision the weather was clear, the seas light, and visibility excellent. Herr testified that he could see about 100 yards ahead in the dark (R.Vol. 5, at 504),[2] and that light sources were visible for a distance of five to six miles (R.Vol. 5, at 491). The TIKI TOO, though travelling at a fair clip, was capable of stopping within 75 feet after the operator released the throttle. Moreover, unless the boat were "planing" (that is, levelled off), requiring a speed near that maintained by Herr or were merely idling, Herr testified that its bow would rise slightly, obscuring the operator's view of the sea ahead (R.Vol. 5, at 492–93). Thus, Herr's actions in operating the boat at an immoderate speed, though regrettable in retrospect, cannot be said to have been totally devoid of reason.

Chevron's failure to mark its flare pipe with either a light or reflective material, on the other hand, was in derogation of an express duty imposed by the Department of Transportation to assure visibility of structures such as flares and avert collisions like that here. If the flare was situated more than 100 yards from the Chevron platform, a light was needed. 33 C.F.R. § 67.05–1(a).

If it stood within 100 yards, the flare should have been marked with "red or white retro-reflective material." 33 C.F.R. § 67.05–1(e). Chevron has offered no excuse for its delinquency. The violation of a safety provision designed to prevent collisions has always been viewed harshly in admiralty. *See The Pennsylvania*, 86 U.S. (19 Wall.) 125, 136, 22 L.Ed. 148 (1874) (imposing on one shown to have violated such a rule the burden of proving that its fault "could not have been" one of the causes of the collision).

The respective transgressions of Herr and Chevron may have been equally responsible for the collision. Liability, however, "is to be allocated among the parties proportionately to the comparative degree of their fault," not according to their degree of causation. *United States v. Reliable Transfer Co.*, 421 U.S. 397, 411, 95 S.Ct. 1708, 1716, 44 L.Ed.2d 251 (1975); *Alaska Packers Association, Inc. v. O/S East Point*, 421 F.Supp. 48, 53 (W.D.Wash.1976).

The calibration of culpability simply is not susceptible to any real precision. Herr's fault lay solely in maintaining an immoderate speed; there is no indication that he failed to keep a proper lookout or was otherwise inattentive to his duties. In light of Chevron's unexcused dereliction of an express statutory duty, we cannot say that the trial court's allocation of fault in this case was clearly erroneous.

## II.

■ Pursuant to 28 U.S.C. § 1961, all money judgments recovered in civil cases in federal district courts automatically bear interest from the date of entry. Section 1961 is applicable to judgments rendered in admiralty just as it is to judgments in traditional civil litigation. *Kotsopoulos v. Asturia Shipping Co.*, 467 F.2d 91, 95 (2d Cir. 1972). *See, e. g., Britt v. Corporacion Peruana De Vapores*, 506 F.2d 927, 932 (5th Cir. 1975). Where more than one such judgment is entered in a case, however—as, for example, originally and on remand—section

---

**2.** Herr's explanation of his failure to see the flare pipe in time was that he had glanced at the lights on the nearby Chevron platform just prior to striking the flare and that his eyes had not fully readjusted before impact (R.Vol. 5, at 513).

1961 is silent regarding from *which* judgment interest is to run.

■ Mrs. Gele's contention that interest on Herr's 20% share of liability, like that on Chevron's 80% share,[3] should be calculated from the original judgment, is grounded in an equitable consideration. Since her husband and predecessor in interest was adjudged to be entitled to $75,000 in damages as of the time of the first judgment, and neither this entitlement nor amount has since been questioned, Mrs. Gele argues that she should not be deprived of compensation for use of any portion of these funds merely because the trial court erred in apportioning the responsibility for payment of that amount. *See Equifax, Inc. v. Luster*, 463 F.Supp. 352, 356 (E.D.Ark.1978) (purpose of post-judgment interest is to compensate plaintiff for use of money adjudged to be his).

This court has been receptive to such a plea in the past. *See Louisiana & Arkansas Ry. v. Pratt*, 142 F.2d 847 (5th Cir. 1944) (holding interest to be due on damages from the time a correct judgment *should* have been entered for plaintiff—that is, at the close of the first trial). Controlling changes in the law since *Pratt*, however, compel a different result in this case.

The Supreme Court in *Briggs v. Pennsylvania R. Co.*, 334 U.S. 304, 68 S.Ct. 1039, 92 L.Ed. 1403 (1948), ruled that, where a court of appeals had remanded a case with directions to enter judgment for plaintiff, the district court could not exact interest from the date of the first judgment unless so ordered by the mandate of the court of appeals. This result was later codified in F.R.A.P. 37, which provides, in part: "If a judgment is modified or reversed with a direction that a judgment for money be entered in the district court, the mandate shall contain instructions with respect to allowance of interest." In this case the mandate of the prior panel modifying the

original trial court judgment, though not expressly directing the entry of a money judgment on remand, effectively prescribed this by merely requiring a reallocation of fault and responsibility for damages. That mandate contained no instructions regarding when interest should attach to any portion of the damages award.

■ Consistent with the result in *Briggs*, this court has held that where interest is simply overlooked, a party who conceives himself to be entitled to interest from a date other than judgment on remand should seek reformation of this court's mandate in a petition for rehearing. *Givens v. Missouri-Kansas-Texas R. Co.*, 196 F.2d 905 (5th Cir. 1952). *Accord*, F.R.A.P. 37, Notes of Advisory Committee on Appellate Rules (West 1969). *See, e. g., Inland Credit Corp. v. M/T Bow Egret*, 552 F.2d 1148 (5th Cir.), *modified on rehearing*, 556 F.2d 756, 758 (5th Cir. 1977). One who fails to seek such a reformation may not later complain that the district court should have calculated interest from an earlier date. *Accord, Riha v. International Telephone & Telegraph Corp.*, 533 F.2d 1053, 1054–55 (8th Cir. 1976). No such petition was filed in this case.

Plaintiff Gele argues that those cases denying the calculation of interest from the original judgment under *Briggs* or rule 37 are distinguishable, since in each case, unlike here, either the amount of liability has been altered on appeal or the initial judgment had not been entered in favor of plaintiff, making the judgment on remand the first actual "money judgment." *See, e. g., United States v. Hougham*, 301 F.2d 133, 134–35 (9th Cir. 1962). The short answer to this contention is that while it may represent a genuine factual distinction, nothing in the language of *Briggs* or rule 37 indicates that the operation of the rules is to turn on such a distinction. Moreover, while the judgment in favor of the plaintiffs Gele has not wavered since the original

---

**3.** Save insofar as it has objected to the allocation of liability itself, Chevron has not contested on this appeal the imposition of interest on its share of liability from the date of the original judgment. We, therefore, express no opinion on this issue. *See Tedder v. F.M.C.Corp.*, 590 F.2d 115, 117 (5th Cir. 1979) (treating issue not briefed as abandoned by appellant); *Gardner v. Blackburn*, 569 F.2d 856, 857 (5th Cir. 1978).

trial, it was not until the remand that a money judgment was first entered *against* Herr and his insurers. Herr could hardly have been expected to abate an obligation prior to the time that it had legally arisen, or now to pay compensation for this failure of prescience. Thus, we hold the district court's treatment of Herr's post-judgment interest to have been correct under *Briggs*, its progeny, and F.R.A.P. 37.

Accordingly, having rejected the respective challenges of Chevron and Gele, we affirm the judgment of the district court.

AFFIRMED.