United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 19, 2006**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 04-20773

Stolt Achievement, Ltd.
                              Plaintiff-Appellant,

versus

Dredge B.E. Lindholm,
its engines, tackle, appurtenances, etc., in rem;
Weeks Marine, Inc., in personam
                              Defendants-Appellees.

Appeal from the United States District Court
For the Southern District of Texas

Before HIGGINBOTHAM, WIENER, and DENNIS, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

Treating the Petition for Rehearing En Banc as a Petition for Panel Rehearing, the Petition for Panel Rehearing is DENIED in part and GRANTED in part as reflected in the substitute opinion filed today. No member of the panel nor judge in regular active service of the court having requested that the court be polled on Rehearing En Banc (Fed. R. App. P. and 5th Cir. R. 35), the Petition for Rehearing En Banc is DENIED. We withdraw our previous opinion, reported at 440 F.3d 266, and substitute the following.

Two ships passing in the Houston Ship Channel collided. Litigation ensued. Stolt Achievement, Ltd. complains of various

errors in the district court's resolution of its claims against the dredge B.E. LINDHOLM and its owner, Weeks Marine, Inc.  We affirm.

## I

On October 21, 2002, the STOLT ACHIEVEMENT, a chemical tanker, was traveling inbound in the Houston Ship Channel.  The LINDHOLM, a dredge boat, having recently concluded dredging operations, was traveling outbound in the area of the Red Fish Island Shoal, a part of Galveston Bay.  The Houston Ship Channel is a busy port, and all vessels are required to navigate under the Inland Rules.[1] At the point of the collision, the Channel is approximately 400 feet wide.

At approximately 1:40 P.M., the STOLT ACHIEVEMENT, captained by Anthony Shoonkind and piloted by Captain Richard Fisher, contacted the LINDHOLM, navigated by Third Mate Timothy Maginn, and the vessels agreed to a customary port-to-port or "one whistle" passing.  The STOLT ACHIEVEMENT, proceeding at a speed of 11 knots, was traveling in the center and later on the starboard side of the Channel; the LINDHOLM, accelerating to 10-12 knots, was proceeding along its far to starboard side.

---

[1]The district court's reference to the Inland Rules as the COLREGS was a misstatement.  As noted by Schoenbaum,

> In most countries the [International Regulations for Preventing Collisions at Sea (COLREGS)] govern ship navigation in internal waters as well as on the high seas.  The United States, however, has adopted a second set of navigational rules, the Uniform Inland Navigational Rules, which are in effect generally in internal waters.  The Inland Rules are applicable inside certain demarcation lines set forth in regulations by the Coast Guard.

2 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW 256 (2d ed. 1994).

Two minutes later, Maginn lost control of the LINDHOLM, causing the vessel to sheer off to its port, cross the Channel's centerline, and collide with the STOLT ACHIEVEMENT midship on its port side. Recognizing the sheer, Captain Fisher attempted to contact the LINDHOLM three times. Maginn did not answer the first two calls, presumably busy attempting to avoid the sheer; upon answering the third call, Maginn told Fisher he had lost control of the LINDHOLM. Fisher turned hard starboard and accelerated, both evasive maneuvers designed to minimize the damage of the now-inevitable collision.

Following a two-day bench trial, the district court concluded that both the STOLT ACHIEVEMENT and the LINDHOLM were responsible for the collision. The court found: (1) the LINDHOLM was running too close to the side of the Channel, thus making it more susceptible to the bow wave of the STOLT ACHIEVEMENT; (2) the STOLT ACHIEVEMENT was proceeding at an excessive speed, exacerbating the suction caused by its bow wave, thus violating Inland Navigational Rule 6; (3) the STOLT ACHIEVEMENT disregarded the U.S. Coast Guard's bulletin requiring vessels to "transit at their slowest safe speed to minimize wake and proceed with caution" after making passing arrangements; (4) the STOLT ACHIEVEMENT stayed too close to (or over) the centerline of the Channel as the vessels approached each other, thus violating rules of prudent seamanship; (5) the LINDHOLM proceeded too fast with a large tanker approaching, thus violating Inland Rule 6; and (6) Maginn should have informed the

STOLT ACHIEVEMENT sooner that he was experiencing difficulty steering, thus violating rules of prudent seamanship.

"Taking into consideration both the number and quality of negligent acts of each party," the district court apportioned liability equally. Each party received 50% of the damages claimed for reasonable repairs, and the court awarded Stolt 50% of its loss-of-use damages. Although prevailing in large respects, Stolt appealed. We have jurisdiction under 28 U.S.C. § 1291.

## II

Stolt presents five issues on appeal. First, Stolt argues that the district court clearly erred in concluding that the STOLT ACHIEVEMENT was negligent in causing the collision with the LINDHOLM. Second, Stolt argues that the district court abused its discretion in admitting testimony from LINDHOLM's expert witness. Third, Stolt argues that the district court clearly erred when it refused to find that the negligence of the LINDHOLM was a superseding cause of the collision. Fourth, Stolt argues that the district court clearly erred when it apportioned liability equally between the parties. Fifth, Stolt argues that the district court erred in holding that Stolt failed to prove entitlement to average adjuster's fees. We address each in turn.

### A

First, Stolt argues that the district court erred in concluding that the STOLT ACHIEVEMENT was negligent in causing the

collision with the LINDHOLM.  In an admiralty action following a bench trial, the factual findings are binding unless clearly erroneous.[2]  A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, based on all of the evidence, is left with the definite and firm conviction that a mistake has been made.[3]  If the district court's account of the evidence is plausible in light of the record, this Court may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.[4]

The applicable standards of care in a collision case stem from the traditional concepts of prudent seamanship and reasonable care, statutory and regulatory rules, and recognized customs and uses.[5] Establishing liability in a collision case is eased by the *Pennsylvania* rule, which provides that when a vessel is in violation of a statutory duty, the burden is on the offending vessel to prove that its conduct did not and could not have caused

---

[2]*In re Mid-South Towing Co.*, 418 F.3d 526, 531 (5th Cir. 2005); *Avondale Indus. v. Int'l Marine Carriers, Inc.*, 15 F.3d 489, 492 (5th Cir. 1994); *Todd Shipyards Corp. v. Turbine* Service, Inc., 674 F.2d 401, 405 (5th Cir. 1982).

[3]*Walker v. Braus*, 995 F.2d 77, 80 (5th Cir. 1993); *Consolidated Grain & Barge Co. v. Marcona Conveyor Corp.*, 716 F.2d 1077, 1082 (5th Cir. 1983); *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948).

[4]*Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985).

[5]*See Folkstone Maritime, Ltd. v. CSX Corp.*, 64 F.3d 1037, 1046 (7th Cir. 1995); *The Tokio Marine & Fire Ins. Co. v. M/T FLORA*, 1999 AMC 1569, 1583 (E.D. La. 1999); *see also* 2 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW 255 (2d ed. 1994).

the collision.[6] Where both parties to a collision are in violation of statutes designed to prevent collisions, the court may apportion fault between the parties, unless either party proves that its statutory violation was not a substantial contributing cause of the collision.[7] Even without a statutory violation, liability may be imposed simply where there is negligence.[8]

Stolt advances two arguments at the district court's conclusion. First, Stolt contends the district court erred in concluding that the STOLT ACHIEVEMENT breached its duty of ordinary care; second, Stolt contends that the district court erred in finding the STOLT ACHIEVEMENT in violation of Inland Rule 6. We address each in turn.

1

Stolt argues that the STOLT ACHIEVEMENT did not breach principles of ordinary care and thus was not negligent in causing the collision with the LINDHOLM. Stolt, with support from amicus curiae Houston Pilots, primarily challenges the district court's statement that "[t]he M/V STOLT ACHIEVEMENT displaces approximately 41,000 tons of water at a time, and creates a very substantial bow

---

[6]86 U.S. (19 Wall.) 125, 136 (1873). Stolt never argues that it was not a contributing cause of the collision. Rather, Stolt focuses on challenging the district court's findings and conclusions that the STOLT ACHIEVEMENT breached the standard of care, proceeded at an excessive speed (in violation of Rule 6), and disregarded the Notice to Mariners requiring slow transit around the LINDHOLM.

[7]*Marine Transport Lines, Inc. v. TAKA INVADOR*, 37 F.3d 1138, 1142 (5th Cir. 1994); *Union Pacific R.R. Co. v. Kirby Inland Marine, Inc.*, 296 F.3d 671, 674 (8th Cir. 2002).

[8]*Folkstone Maritime*, 64 F.3d at 1046.

wave that can push water out more than a mile in front and to the sides of a ship." The Houston Pilots urge that this effect is "physically impossible" and, if true, would leave the Channel unnavigable.

Although we too question the accuracy of the district court's statement, especially given the lack of scientific expert testimony in this case, we find ample support for the district court's conclusion that the STOLT ACHIEVEMENT was negligent. First, the court found that the STOLT ACHIEVEMENT "was proceeding at an excessive speed in the Red Fish Island Shoal area at a time when a small vessel such as a dredge was in the same location."[9] Second, the district court found that the STOLT ACHIEVEMENT "stayed too close to (or over) the Channel centerline too long as the vessels approached each other for their passing."[10] Whatever hydrodynamic

[9]Whether the STOLT ACHIEVEMENT's "excessive speed," and resultant violation of Inland Rule 6, triggers the *Pennsylvania* rule is of no moment. A previous panel of this Court, relying on authority from the Second Circuit, stated that the *Pennsylvania* rule "applies only to violations of statutes that delineate a clear legal duty, not regulations that require judgment and assessment of a particular circumstance." *Tokio Marine & Fire Ins. Co. v. Flora MV*, 235 F.3d 963, 966-67 (5th Cir. 2001); *see also Complaint of Interstate Towing*, 717 F.2d 752, 756 (2d Cir. 1983); *In re Marine Sulphur Queen*, 460 F.2d 89, 98 (2d Cir. 1972); *Afran Transport Co. v. United States*, 435 F.2d 213, 218-19 (2d Cir. 1970). As it is unnecessary to decide, we leave open the question of whether Inland Rule 6, 33 U.S.C. § 2006, presents a sufficiently "clear legal duty" to trigger application of the *Pennsylvania* rule, but we note that the one district court addressing the question concluded that Rule 6 was a clear, nondiscretionary requirement. *See In re Diamond B Marine Svcs., Inc.*, Nos. 99-951, 99-984 & 99-1346, 2001 WL 1164914, at *10 (E.D. La. Sept. 28, 2001) (unpublished).

[10]We recognize that a variety of maritime treatises suggest staying in the center of the channel as long as possible. *See, e.g.*, HENRY H. HOOYER, BEHAVIOR AND HANDLING OF SHIPS 93 (1983) ("When two ships must pass each other in a narrow channel, they should stay close to the middle of the channel or canal as long as possible. How close to each other they can approach before taking action depends on the situation, and on the maneuverability of the ships."). The district

-7-

effect the STOLT ACHIEVEMENT had on the LINDHOLM, that effect was increased by the STOLT ACHIEVEMENT's location in the narrow Channel. Third, the court found that "the substantial suction caused by the bow wave of the M/V STOLT ACHIEVEMENT was exacerbated by that vessel's speed," especially given that "the shoal created a relatively restricted passage on the west side." Although perhaps tied to the court's conclusion concerning the magnitude of the STOLT ACHIEVEMENT's bow wave, Stolt never disputes that the hydrodynamic forces produced by a vessel are directly related to its speed and the peculiarities of the Houston Ship Channel at the Red Fish Island Shoal. Lastly, the court concluded that the U.S. Coast Guards "Notice to Mariners," which cautioned vessels to travel at their "slowest safe speed" when near the Red Fish Island Shoal, made travel at customary speeds inappropriate.[11] Although we may have reached a different conclusion, that alone is not sufficient for us to find that the district court's findings were clearly erroneous.[12]

---

court's statement does not contradict the treatises; and, sitting as an appellate court, we do not find reason to discount its judgment that the STOLT ACHIEVEMENT should have started moving to its starboard side sooner than it did.

[11]*See Theriot v. United States*, 245 F.3d 388, 401-02 (5th Cir. 1998) (finding pilot negligent for failing to consult Coast Guard's "Notice to Mariners" regarding danger in unfamiliar area); *United States v. The Washington*, 241 F.2d 819, 822 (4th Cir. 1957) (finding vessel negligent given that it was on notice of information provided by Coast Guard).

[12]*See Anderson*, 470 U.S. at 573 ("[The clearly erroneous standard] plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently.").

Next, Stolt contends that the district court erred in finding the STOLT ACHIEVEMENT in violation of Inland Rule 6. Stolt argues the district court used two inconsistent definitions of "safe speed," one of which erroneously required the STOLT ACHIEVEMENT to consider the effect of its vessel on other vessels in the vicinity.

We do not agree that the district court used two inconsistent definitions of "safe speed." Without citing any authority, the court initially defined "safe speed" as a speed "that does not have an adverse effect on other vessels in the area." Then, the court quoted Rule 6 and found the STOLT ACHIEVEMENT in violation. To us, a speed that allows a vessel to "take proper and effective action to avoid collision and be stopped within a distance appropriate to the prevailing circumstances,"[13] as required by Inland Rule 6, is also a speed "that does not have an adverse effect on other vessels in the area," as defined by the district court. Moreover, Inland Rule 6 provides several factors for determining a safe speed, one of which requires courts to take into account "the traffic density including concentration of fishing vessels or any other vessels."[14] It was not error for the district court to apply a definition of safe speed that required the STOLT ACHIEVEMENT to consider the

---

[13] 33 U.S.C. § 2006.

[14] *Id.* § 2006(a)(ii).

effect of its vessel on other vessels in the vicinity.  Stolt's contentions regarding application of Rule 6 are without merit.

B

Second, Stolt argues that the district court erred when it admitted testimony of David Scrunton, LINDHOLM's expert witness. Stolt contends that while Scrunton was qualified to testify as to proper ship handling, navigation, and observations on the basis of his general experience, he was not qualified to testify as to the specific hydrodynamic effects of the STOLT ACHIEVEMENT on the LINDHOLM at the time of the collision.  We review the admission of expert testimony for an abuse of discretion.[15]

*Daubert v. Merrell Dow Pharmaceuticals, Inc.* established the baseline criteria for scientific expert testimony;[16] *Kumho Tire Co. v. Carmichael* extended *Daubert* to all forms of expert testimony;[17] and these principles apply in admiralty matters.[18]  In addition, *Kumho Tire* recognized that experts may testify on the basis of their own "personal knowledge or experience" and refused to hold that the *Daubert* factors must be addressed in every case, given the

---

[15]*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

[16]509 U.S. 579, 593-95 (1993) (instructing courts to examine whether a particular scientific theory can be tested, whether a theory has been through peer review, the theory's rate of error, and whether the theory has been generally accepted in the scientific community).

[17]*Kumho Tire Co.*, 526 U.S. at 147-49.

[18]*See, e.g.*, *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 48-50 (2d Cir. 2004); *Rothfos Corp. v. M/V NUEVO LEON*, 123 F.Supp.2d 362, 371-72 (S.D. Tex. 2000).

wide variety of experts and issues that may come before the district courts.[19]

Stolt contends that the district court allowed Scrunton to testify as to specific hydrodynamic effects. The transcript does not bear this contention out. The district court consistently refused to allow Scruton to testify to the specific hydrodynamic effect of the STOLT ACHIEVEMENT on the LINDHOLM at the time of the collision. As Scrunton began to testify about the bow wave from the STOLT ACHIEVEMENT, the following colloquy is occurred:

> MR. DURHAM [counsel for Stolt Achievement]: Objection. This is the area we contend that this witness is not qualified to testify. The calculations can be done as to the forces generated. He has not done this. The effect that would be reached to the other vessels can be calculated. He has not done this. And he, I can take him on *voir dire*, but he's not a hydro dynamic expert.
>
> THE COURT: All right. That's clear. Okay. You can't testify about anything that technical or the calculations as counsel's indicating.
>
> THE WITNESS: All right.
>
> THE COURT: You just to keep it more general --
>
> THE WITNESS: Okay, your Honor.
>
> THE COURT: -- based on your experience from what you can perceive and what you observed over your years on the water and studying it.[20]

---

[19]*Kumho Tire*, 526 U.S. at 149.

[20]Trial Transcript, vol. 4, at 81. A subsequent passage is also illustrative. The court stated: "I'm less interested in your conclusions as to the reasoning as -- because there's a question about have far you can go on this given your . . . expertise, or your lack of technical study. But I am interested in what you saw, okay? I'm very interested in what you saw." Trial Transcript, vol. 4, at 82.

Scruton's testimony never delved into specific hydrodynamic effects. His conclusions were based on his experience as a Master Mariner, as well as his examinations of the Red Fish Island Shoal in the Houston Ship Channel. In addition, Stolt never disputed the existence of a general hydrodynamic effect upon a vessel in water. Finally, the district court allowed similar testimony from Captain Karl Haupt, Stolt's expert witness and also a Master Mariner.[21] As the district court stated in response to Stolt's motion to alter or amend under Rule 59, "Technical hydrodynamic expert testimony as to the size and force of the bow wave was not necessary in this case." Admission of Scruton's testimony was not an abuse of discretion.

C

Third, Stolt argues that the district court clearly erred in refusing to find that negligence of Maginn, the LINDHOLM's navigator, occurring after the negligence of the STOLT ACHIEVEMENT, was a superseding cause of the collision. Questions of causation in admiralty are questions of fact, reviewed for clear error.[22]

In *Exxon Co., USA v. Sofec, Inc.*, the Supreme Court held that the common law negligence doctrines of proximate causation and superseding cause apply in admiralty notwithstanding the adoption

---

[21]Following another objection from Stolt regarding Scruton's testimony on the effect of the bow wave, the Court stated: "Okay. Neither side has any such calculations. But your witness [Haupt], who is not a hydraulogist[,] was allowed to testify to his impressions of what he thought the bow wake would or wouldn't do, and the stern suction, and whatever else there was. So I'm allowing this. It goes to weight. And I do respect that." Trial Transcript, vol. 4, at 127.

[22]*Wilkins v. P.M.B. Systems Engineering, Inc.*, 741 F.2d 795, 800 (5th Cir. 1984).

of comparative fault.[23]  The superseding cause doctrine applies where the defendant's negligence in fact substantially contributed to the plaintiff's injury, but the injury was actually brought about by a later cause of independent origin that was not foreseeable.[24]  It is predicated on the notion that "there must be a terminus somewhere, short of eternity, at which the second party becomes responsible in lieu of the first."[25]

Stolt attempts to analogize this case to *Lone Star Industries, Inc. v. Mays Towing Co., Inc.*,[26] but that analogy fails.  There, a barge owner brought suit against a towing company for damage to the barge that occurred when it sunk while being unloaded.  It was undisputed that the barge sunk because of a crack in its hull caused by the negligence of the towing company.  Due to inclement weather, however, the barge owner failed to inspect the barge prior to unloading, which would have allowed for discovery of the crack.  A split panel of the Eighth Circuit found the barge owner negligent

---

[23]517 U.S. 830, 836-39 (1996).  The doctrine of comparative fault was adopted in *United States v. Reliable Transfer*, 421 U.S. 397 (1975), which is discussed in the section III(D), *infra*.

[24]1 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW 165 (2d ed. 1994); *see also Nunley v. M/V Dauntless Colocotronis*, 727 F.2d 455 (5th Cir. 1984) (en banc).

[25]*In re Kinsman Transit Co.*, 338 F.2d 708, 722 (2d Cir. 1964) (Friendly, J.).  Many courts, including this one, rely upon the factors set forth in RESTATEMENT (2ND) OF TORTS § 442 for guidance in this inquiry.  Two such factors are relevant here: first, courts inquire into whether the intervening force "brings about harm different in kind from that which would otherwise have resulted from the actor's negligence"; second, courts look to see whether the intervening force "appear[s] . . . to be extraordinary rather than normal in view of the circumstances existing at the time of its operation."  RESTATEMENT (2ND) OF TORTS § 442(a), (b).

[26]927 F.2d 1453 (8th Cir. 1991).

for failing to inspect the barge prior to unloading.  The court found the barge owner's negligence brought about a harm "different in kind" from the harm brought about by the towing company.  The barge owner's negligence caused the barge to sink; the towing company's negligence only caused a crack in the hull.  Next, the court found the barge owner's failure to inspect an affirmative act "unrelated to any negligence" of the towing company.  On this basis, the negligence of the barge owner was a superseding cause of the damage to the barge.

This case is distinguishable.  Here, all of the negligent acts occurred within a very small window of time.  The STOLT ACHIEVEMENT and the LINDHOLM agreed to a port-to-port passing at 1:40 P.M.; two minutes later, the collision occurred.  In *Lone Star*, the negligence of the towing company started and finished before the start of any negligence of the barge company.[27]  We agree with the conclusions of the district court: first, "The commencement of the shear [sic] . . . was not an event of independent origin from the

---

[27]*Id.* at 1459-60.  *Exxon* presents a similar scenario.  There, the tanker, the *Exxon Houston*, broke from a mooring system due to the alleged negligence of the system and its manufacturer. *Exxon*, 517 U.S. at 832-33.  Between 1728 and 1830 (nautical time), the *Exxon Houston* went through a series of maneuvers to avoid further damage from the hose that previously connected the ship to the mooring system. *Id.* at 833.  Then, between 1830 and 2004 after the vessel was no longer in danger from the hose, the captain of the *Exxon Houston* negligently navigated the vessel into a reef, running it aground, and resulting in the ship's constructive total loss. *Id.* at 833-34.  Exxon sued the owner and manufacturer of the mooring system for damages to the ship caused by running into the reef. *Id.*  The Supreme Court affirmed the district court's finding that the negligence of the *Exxon Houston*'s captain was a superseding cause, thus preventing the mooring system from being held responsible. *Id.* at 840-41.  Unlike the instant case, *Exxon* involved two wholly separate, independent negligent acts: the breaking from the mooring system and the navigation into the reef.

other acts by the parties"; second, "[T]he negligent acts of the parties took place almost simultaneously, encompassing only a period of about two minutes."

Next, Stolt points to various actions that Maginn could have taken in order to possibly prevent the collision: increased the speed of his vessel (which would increase maneuverability); steered "hard right rudder" (which would have moved the LINDHOLM back to its right); or, at the very least, maintained his speed. On this basis, Stolt argues that Maginn's subsequent acts caused a type of harm ("collision") that was different than the harm caused by prior negligent acts ("sheer").

We reject Stolt's argument. First, "A subsequent negligent act does not excuse prior negligence except in most unusual circumstances."[28] Second, Stolt's characterizations of the types of harm makes little sense. The "sheer" itself did not cause any harm; a variety of negligent acts, by both the LINDHOLM and the STOLT ACHIEVEMENT, caused the sheer, which ultimately led to the collision. *Lone Star*, in contrast, involved two different harms: the crack in the barge's hull (caused by the towing company) and the sinking of the barge (caused, at least in part, by the barge company's failure to inspect the barge prior to unloading).[29] Here,

---

[28]*Transorient Navigators Co., S.A. v. M/S SOUTHWIND*, 714 F.2d 1358, 1371 (5th Cir. 1983) (citing RESTATEMENT (2ND) OF TORTS § 442(b)).

[29]*Lone Star*, 927 F.2d at 1455. Likewise, *Exxon* involved two different damages: first, the damage caused by the break in the hose connecting the vessel to the mooring system; second, the damage caused when the captain of the *Exxon*

-15-

there is one harm: damage from the collision. Stolt's attempt to cast the collision in a different light is unpersuasive.

All the relevant events occurred within a very short time frame (two minutes). At the point of collision, the Houston Ship Channel is only 400 feet wide, and the STOLT ACHIEVEMENT is a large tanker, with a breadth of approximately 102 feet. We refuse to conclude that Maginn's actions in the face of the sheer were sufficiently "extraordinary" as to be unforeseeable to the STOLT ACHIEVEMENT. Thus, we conclude that the district court did not clearly err in refusing to find the negligence of Maginn to be a superseding cause of the collision.

D

Fourth, Stolt argues that the district court clearly erred when it apportioned responsibility for the collision equally between the parties. We review the district court's apportionment of fault in a collision case for clear error.[30]

Apportionment of fault in a collision case sets sail with the Supreme Court's decision in *United States v. Reliable Transfer Co.*, in which the Court jettisoned the divided damages rule in favor of

---

*Houston* ran the ship aground on a reef. *Exxon*, 517 U.S. at 832-34. Here, all the negligent acts, by both STOLT ACHIEVEMENT and LINDHOLM, caused a single event: the collision.

[30]*Allied Chemical Corp. v. Hess Tankship Co. of Delaware*, 661 F.2d 1044, 1057 (5th Cir. 1981) ("Our review of the Court's apportionment of damages is governed by the 'clearly erroneous' standard."); *Inland Oil & Transport Co. v. Ark-White Towing*, 696 F.2d 321, 325 (5th Cir. 1983).

an allocation of responsibility based on comparative fault.[31] The Court, in *Reliable Transfer*, held that equal apportionment of responsibility was proper only if "the parties [were] equally at fault" or if "it [was] not possible fairly to measure the comparative degree of their fault."[32]

As we have recognized, "[t]he calibration of culpability simply is not susceptible to any real precision."[33] Apportionment is not a mechanical exercise that depends upon counting up the errors committed by both parties. The trial court must determine, based upon the number and quality of faults by each party, the role each fault had in causing the collision.[34]

Stolt argues that a finding of equal fault is the exception, not the rule, and that appellate courts "often" reverse 50/50 allocations. Although perhaps true, we have never held that *Reliable Transfer* "delete[d] the number '50' from the federal courts' vocabulary."[35] As Judge Brown noted in *Mac Towing Inc. v. American Commercial Lines*, "[i]f the court finds the parties

---

[31]421 U.S. 397, 411 (1975).

[32]*Id.*

[33]*Gele v. Wilson*, 616 F.2d 146, 148 (5th Cir. 1980).

[34]*See United Overseas Export Lines, Inc. v. Medluck Compania Naviera*, 785 F.2d 1320, 1325-26 (5th Cir. 1986).

[35]*See Mac Towing Inc. v. Am. Commercial Lines*, 670 F.2d 543, 547 (5th Cir. 1982) (recognizing that simply because a court "divided damages equally among the parties does not mark a failure to follow *Reliable Transfer*").

equally at fault, so be it."[36]  Here, the district court identified a variety of negligent acts by both the STOLT ACHIEVEMENT and the LINDHOLM,[37] and it concluded, "Taking into consideration both the number and quality of negligent acts of each party, the court finds and concludes that the fault of each vessel contributed equally to the accident."

Moreover, Stolt's reliance on *Portacci v. Moran Towing & Transportation Co.* is misplaced.  There, the district court determined that two vessels' "mutual fault" caused the collision, and thus allocated fault equally.  On appeal, we remanded the allocation question to the district court, concluding that a finding of "mutual fault" does not imply "equal fault."  We stated that "mutual fault . . . describes 10%-90% just as accurately as it does 50%-50%."  Moreover, we found no indication in the district court's opinion that a specific apportionment was not practicable.

Here, in contrast, the district court found that both the STOLT ACHIEVEMENT and the LINDHOLM "contributed *equally* to the accident."  It is true that the district court never stated that it would not be practicable to allocate fault comparatively; however,

---

[36]*Id.*

[37]Specifically, the district court found that: (1) the LINDHOLM was running too close to the side of the dredged area in the Channel; (2) the STOLT ACHIEVEMENT was proceeding at an excessive speed; (3) the STOLT ACHIEVEMENT violated rules of prudent seamanship as well as Inland Navigational Rule 6; (4) the STOLT ACHIEVEMENT stayed too close to (or over) the Channel's centerline; (5) the LINDHOLM proceeded too fast in the area, thus also violating Rule 6; (6) Third Mate Maginn was negligent in failing to notify the STOLT ACHIEVEMENT of his steering issues.

the Supreme Court indicated that such a finding was unnecessary when the court finds both parties "equally at fault."  We reject Stolt's appeal of the district court's findings on negligence, and we see no reason to upset its allocation of liability.

E

Finally, Stolt argues that the district court erred in holding that it failed to prove entitlement to average adjuster's fees.[38] Stolt contends that the parties stipulated to an award of fees prior to trial; Weeks responds that the parties stipulated to the amount of fees, but never to whether fees were recoverable.

The district court did not err in denying Stolt fees.  The stipulation entered by the parties provides:

> 2. Stolt Achievement, Ltd. also seeks recovery of the fees and expenses of Maritime Adjusting Services in the agreed amount of $72,925.00, which Weeks Marine, Inc. contends is not a recoverable item.  This amount is the average adjuster's fee and expenses[,] and whether such are recoverable as an element of damages is a question of law to be resolved by the Court.

As should be plainly obvious, a stipulation as to the amount of fees is not a stipulation to liability for such damages.  The stipulation is clear: Stolt and Weeks agreed to an amount; Weeks

---

[38]Average is an ancient maritime doctrine which provides that ship and cargo share ratably in the overall loss resulting from efforts to extricate the ship and cargo from a danger common to both.  *See Usinas Siderugicas de Minas Geras, Sa-Usiminias v. Scinda Steam Navigation Co.*, 118 F.3d 328, 330 (5th Cir. 1997).  To recover for average, a party must show: (1) a common peril or danger that is imminent, (2) a voluntary sacrifice of cargo for the common benefit, and (3) the successful avoidance of the peril. *Barnard v. Adams*, 51 U.S. (10 How.) 270 (1850).  Typically, the average adjuster performs the complicated task of calculating the contributing values and the assessment of general average losses. 2 BENEDICT ON ADMIRALTY § 184 (7th ed. 2003).

contested whether that amount was recoverable.[39]  Stolt was the party moving for an award of fees; Stolt had the burden of establishing it was so entitled.[40]  Merely resting on this stipulation was insufficient.

## III

Accordingly, the district court's judgment is AFFIRMED.

---

[39]The district court found no evidence regarding (1) the general average, (2) the hiring of an adjuster, (3) what the adjuster did, (4) whether it was reasonable for Stolt to engage an average adjuster, (5) what cargo was damaged, (6) whether there was contribution from cargo owners, and (7) whether the collision at issue qualifies for general average procedures.

[40]*See The Potomac*, 105 U.S. 630, 632 (1881).  Stolt made a similar argument to the district court in its motion to alter or amend the judgment under Rule 59, and the district court similarly rejected Stolt's claim.  It stated: "The court did not rule that average adjuster's fees [were] not a recoverable item in this type of case.  The court ruled only that [Stolt] wholly failed to meet its burden in this case."