# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

January 30, 2019

No. 18-30348

Lyle W. Cayce
Clerk

In re: In the Matter of the Complaint of 4-K MARINE, L.L.C., as owner of the
M/V Miss Elizabeth, petitioning for exoneration from, or limitation of,
liability and CENTRAL BOAT RENTALS, INCORPORATED, as operator of
the M/V Miss Elizabeth, petitioning for exoneration from, or limitation of,
liability

4-K MARINE, L.L.C., as owner of the M/V Miss Elizabeth, petitioning for
exoneration from, or limitation of, liability; CENTRAL BOAT RENTALS,
INCORPORATED, as operator of the M/V Miss Elizabeth, petitioning for
exoneration from, or limitation of, liability,

> Petitioners - Appellants

v.

ENTERPRISE MARINE SERVICES, L.L.C.,

> Claimant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana

Before WIENER, SOUTHWICK, and COSTA, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

This is a maritime case involving an allision. The issue is whether the
owner of the stationary, "innocent" vessel must be reimbursed for the medical
expenses of an employee who fraudulently claimed his preexisting injuries had
resulted from the allision. The district court said "no." We AFFIRM.

No. 18-30348

## FACTUAL AND PROCEDURAL BACKGROUND

In June 2015, the M/V TOMMY, a tug owned and operated by the claimant Enterprise Marine Services, LLC, was pushing a flotilla of barges on the lower Mississippi River. Its lead barge made contact with the M/V MISS ELIZABETH, a tug that along with its barges was essentially stationary and near the river's bank. That tug was owned by 4-K Marine and operated by Central Boat Rentals, Inc. ("CBR"). On board the M/V MISS ELIZABETH were the wheelman Prince McKinley and a deck hand named Justin Price. Both alleged they were injured in the allision.

CBR and 4-K Marine jointly filed a petition under the Shipowner's Limitation of Liability Act in the U.S. District Court for the Eastern District of Louisiana. *See* 46 U.S.C. § 30501, *et seq.* We will refer to the two petitioners as CBR. As required by Rule F of the Supplemental Rules for Admiralty or Maritime Claims, the district court issued a notice that all claimants respond. McKinley, Price, and Enterprise Marine all answered. A flurry of claims, cross-claims, and counter-claims followed with each of the crewmen, owners, and operators attempting to recover from one or more of the others.

Only one of those claims is at issue in this appeal, namely, CBR's counter-claim that Enterprise Marine reimburse it for amounts it paid to McKinley for medical expenses under its obligations as his Jones Act employer. CBR paid, and Enterprise Marine reimbursed, $23,485 in maintenance and $5,345.84 in cure to McKinley. CBR also agreed with a surgeon and a hospital to pay for a back surgery on behalf of McKinley, but Enterprise Marine refused to reimburse those expenses on the basis that McKinley's back condition was not the result of the allision.

After a bench trial, the district court found that McKinley's knee problems were caused by the accident. His back problems, though, predated the accident and were unaffected by the allision. The court also found that

2

No. 18-30348

McKinley fraudulently withheld "material issues about pre-existing medical conditions and medications both before and after the incident." Based on these findings, the district court held that CBR had no obligation to pay for McKinley's back surgery, and Enterprise Marine had no obligation to reimburse CBR.

Enterprise Marine sought the return of the amounts it had already reimbursed for maintenance and cure that were not related to McKinley's knee problem. The district court refused to grant that relief on the grounds that each party was a sophisticated maritime company, knowledgeable about its obligations and its defenses. Enterprise Marine's failure to make a reasonable investigation earlier in the process meant it would not now be allowed to recoup unnecessary reimbursements to CBR. CBR timely appealed, and there is no cross-appeal.

## DISCUSSION

In this appeal from a judgment entered after a bench trial, we review the district court's conclusions of law *de novo* and its factual findings for clear error. *Lewis v. Ascension Par. Sch. Bd.*, 806 F.3d 344, 353 (5th Cir. 2015). CBR argues that maritime principles as well as a contract between the parties compel Enterprise Marine to reimburse McKinley's back surgery regardless of the employee's fraud.[1]

---

[1] CBR also briefed an equitable estoppel argument on appeal but did not raise the issue in the district court until a post-trial memorandum. The district court ignored the issue in its opinion and judgment. "If an argument is not raised to such a degree that the district court has an opportunity to rule on it, we will not address it on appeal." *F.D.I.C. v. Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1994). Regardless, CBR's argument fails on the merits. CBR had to demonstrate "justifiable reliance" on Enterprise Marine's "conduct or word." *Johnson v. Seacor Marine Corp.*, 404 F.3d 871, 878 (5th Cir. 2005). CBR admits, however, that Enterprise Marine "balked at paying for the surgery" in the "Fall of 2016" and that the surgery did not occur until February 2017. CBR could not have justifiably relied on

No. 18-30348

*I.    Maritime principles concerning reimbursement*

If a seaman "becomes ill or suffers an injury while in the service of a vessel," regardless of which party is to blame, his Jones Act employer owes him "an absolute, non-delegable duty" to pay "a 'per diem living allowance for food and lodging,'" which is called "maintenance," as well as "payment for medical, therapeutic, and hospital expenses," which is called "cure." *Bertram v. Freeport McMoran, Inc.*, 35 F.3d 1008, 1011–13 (5th Cir. 1994) (citations omitted); *see also Armstrong v. Trico Marine, Inc.*, 923 F.2d 55, 58 n.2 (5th Cir. 1991). If a third-party "partially or wholly caused the seaman's injury," the employer can recover the maintenance and cure payments from it. *Bertram*, 35 F.3d at 1013.

Enterprise Marine withheld reimbursement of the costs of McKinley's back surgery after reviewing his medical history and concluding his injury was not caused by the allision. McKinley's treating physician, though, believed his back injury was due to the incident.

A seaman's entitlement to maintenance and cure applies only to injuries "suffered [or] . . . aggravated or [that] become manifest while he [is] 'in the service of the vessel.'" 1 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 6:30 (6th ed. 2018). The district court found the allision did not cause or aggravate McKinley's back injury. CBR does not dispute this. A third-party must reimburse only where its negligence "caused or contributed to the *need* for maintenance and cure." *Bertram*, 35 F.3d at 1014 (emphasis added) (citation omitted). Because McKinley's back condition did not result from the allision, Enterprise Marine did nothing that "caused or contributed to [a] need

---

Enterprise Marine's other representations it alleges communicated a willingness to pay for the back surgery.

4

No. 18-30348

for maintenance and cure" for that particular medical problem. *Id.* That means it did not owe reimbursement to CBR for McKinley's back surgery.

We acknowledge that CBR identifies practical problems it faced in deciding whether to cover its employee's medical expenses. Decisions about maintenance and cure had to be made early, well before this bench trial. CBR was presented with what initially appeared to be a plausible claim for cure. A Jones Act employer who "unreasonably rejects [a maintenance and cure] claim" becomes liable for compensatory damages, and employers who have "not only been unreasonable but ha[ve] been more egregiously at fault," are liable for punitive damages and attorney's fees. *Morales v. Garijak, Inc.*, 829 F.2d 1355, 1358 (5th Cir. 1987); *see also Atlantic Sounding Co., Inc. v. Townsend*, 557 U.S. 404, 424 (2009).

Practical problems notwithstanding, maritime law makes Enterprise Marine liable only for such injuries as it causes. CBR did have options. "Upon receiving a claim for maintenance and cure, the [employer] need not immediately commence payments; he is entitled to investigate and require corroboration of the claim." *Morales*, 829 F.2d at 1358. The employer becomes liable for compensatory damages only if it "*unreasonably* rejects the claim" after an investigation. *Id.* (emphasis added). Punitive damages and attorney's fees are assessed only for behavior that is *egregious*. Accordingly, CBR could have refused to pay for McKinley's back surgery so long as it had a reasonable factual or legal basis. We do not minimize the uncertainties of such decisions, but the law at least provides a means to deal with them. CBR also had the right to deny payment of maintenance and cure where the employee "intentionally misrepresent[ed] or conceal[ed] material medical facts, the disclosure of which [was] plainly desired" by the employer. *McCorpen v. Cent. Gulf S.S. Corp.*, 396 F.2d 547, 549 (5th Cir. 1968).

This holding does not, as CBR asserts, compromise the law's concern for injured seamen nor does it "place a burden on an innocent employer to conduct an investigation and possibly assert a . . . defense as a condition to later receiving reimbursement from a third party."  The seaman's right to maintenance and cure is balanced with his employer's interests by allowing the employer to investigate and reasonably withhold payment.  *Morales*, 829 F.2d at 1358.  There is no reason the balance should be different when the mechanisms of maintenance and cure make a third-party tortfeasor the ultimate entity responsible for any *required* payment.  Indeed, in those circumstances these rules arguably are all the more justified.

## II.     *Contractual obligations to reimburse*

CBR also argues that it is entitled to be reimbursed because of an agreement between the parties.  The existence of a maritime contract and its terms are questions of fact we review for clear error.  *See One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 262–64 (5th Cir. 2011).  On the other hand, "interpretation of [those] terms is a matter of law that we review *de novo.*"  *Id.* at 262.

Enterprise Marine concedes there was an agreement regarding reimbursement for maintenance and cure.  The agreement arose from a conference in April 2016 among counsel for each party and a claims adjuster.  At the time of the meeting, though, doubts about the cause of McKinley's back problems were at most inchoate.  It is not clear when Enterprise Marine began to question the veracity of McKinley's back complaints, but an independent medical examination in July 2016 concluded the injuries were preexisting.

No written contract fully embodies these parties' agreement, but both sides reference an email CBR's counsel sent to Enterprise Marine.  CBR says the email "outline[s] the agreement reached between the parties" while

Enterprise Marine characterizes it as "a memorandum . . . setting out the steps which would be taken for submitting reimbursement requests to Enterprise [Marine]" through a third-party claims adjuster. The email does not address either party's obligations if any medical expenses were found to be for injuries unrelated to the allision. The operative language in the email simply states:

> As discussed in the meeting [between CBR and Enterprise Marine], maintenance and cure checks will be issued directly from [CBR] . . . every two weeks. [The adjuster of McKinley's claims] will request reimbursement from Enterprise [Marine] . . . every sixty days.

> [The adjuster] will have [McKinley] send all medical invoicing directly to [the adjuster] . . . . Medical invoicing of [McKinley] will be audited by [the adjuster] and forwarded to [CBR] for payment. [The adjuster] will request reimbursement for medicals from Enterprise [Marine] . . . . [The adjuster] will also request reimbursement from Enterprise [Marine] for [CBR's] past maintenance and cure payments.

CBR claims that contractual terms not mentioned in the email were established at the meeting, but the evidence contains few details. There was testimony that the email "was a recitation of the meeting." The claims adjuster who was at the meeting testified that there were no "limitations given to [him] about not paying for certain items." The adjuster stated specifically that Enterprise Marine's attorney did not mention limits on reimbursement. Enterprise Marine quotes the adjuster's testimony that the purpose of the email "was to summarize the process of how maintenance and cure would be issued . . . and reimbursed by Enterprise" Marine. The district court made note of the email and the testimony about the meeting, but it did not make findings about the agreement's details.

Even with the adjuster's testimony that the agreement contained no "limitations" about payments, we see no concession at that time by Enterprise Marine that it would make these payments even if it were later determined

that the medical expenses were unrelated to injuries arising from the allision. The district court gave short shrift to the agreement, which is indicative of a finding that the agreement simply did not cover a situation in which it later became clear that the seaman's claims were fraudulent.  We see no error.

AFFIRMED.